# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

HENRY BROWN and Another v. HENRY FISCHER and Others.[1]

June 12, 1899.

Nos. 11,554—(114).[2]

**Guardian and Ward—Sale by Mother to Stepfather of Ward.**

G. S. 1894, § 4605, provides that "no executor, administrator or guardian making the sale shall directly or individually purchase or be interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void." *Held* that, where the mother as guardian of her infant children sold their real estate to her (second) husband, she was interested in such sale, and the same was voidable at the election of the wards.

**Evidence—Purchaser in Good Faith.**

*Held*, also, that it conclusively appears from the evidence that the husband did not hold said real estate as a purchaser thereof in good faith.

Action in the district court for Hennepin county by Henry Brown, an infant, by his guardian ad litem, and Frederick Brown to set aside a guardian's sale. The case was tried before Harrison, J., who found in favor of plaintiffs; and from an order denying a motion to amend the findings of fact and conclusions of law, or for a new trial, defendant Henry Fischer appealed. Affirmed.

*A. C. Middlestadt* and *Smith & Smith,* for appellant.

*Arctander & Arctander,* for respondents.

BUCK, J.

One Henry Brown died intestate on January 14, 1882, leaving a widow, Christina Brown, and two children, the plaintiffs herein, viz.

[1] See note on page iv, supra.    [2] April, 1899, term.

77 M.—1

Frederick Brown, born November 5, 1874, and Henry Brown, born January 1, 1877. At the time of Brown's death he owned and occupied in fee simple, as his homestead, lot 4 in block 21 of Christmas, Lewis, Reno & Sherman's addition to North Minneapolis. There was a third son living at the death of Henry Brown, but he died in early infancy. Christina Brown was the mother of all these children. On February 20, 1882, letters of administration on Brown's estate were issued to the widow, and in July of that year she was authorized to sell, and did sell, another lot, of which Brown died seised, to pay a mortgage thereon of $300. There was but a small amount of personal estate left by Brown at the time of his decease. During the year of 1883 Christina Brown married Henry Fischer, one of the defendants herein, and she died intestate September 24, 1894. On October 26, 1887, a decree of distribution of Henry Brown's estate was made, entered, and rendered by the probate court of Hennepin county, assigning to Christina Fischer, formerly Christina Brown, said lot 4 for her natural life, and by said decree these plaintiffs became the owners in fee each of an undivided one-half part in said lot, subject to the said mother's life estate therein.

Upon her petition she was appointed guardian of these plaintiffs on October 21, 1887; she representing in said petition that they were seised of real estate not yielding any rents and profits, and that to protect and preserve their legal rights therein it was necessary that a guardian should be appointed. Christina Brown was appointed, qualified as such guardian, and gave a bond in the sum of $100, which was approved by the court, and on November 15, 1887, she applied to the probate court for leave to sell the said minors' real estate, being the said lot 4, and which was then being used as a homestead by Christina Brown and her husband, Henry Fischer, and in said petition she represented to the probate court that she would join with said minor children in the proposed sale of said lot, and that the reason why it was necessary to sell said lot was that there was no income from the estate of the deceased with which to maintain and educate her said wards, and that it was to their interest that said lot be sold, and the proceeds put out at interest, or invested in some productive stocks, or used in the education of said minors, and that said sale would be to the benefit and advantage of

said minors. Although an order was made for all interested persons to show cause why license should not be granted to sell said real estate, the same was not served on the minors, plaintiffs herein, and said proceedings were kept secret from them by Christina Fischer, and plaintiffs had no notice or knowledge of said proposed sale.

On January 2, 1888, the probate court granted an order to sell the interests of said plaintiffs at private sale. The order provided for the appointment of Claus Mumm and Otto Schwartz, as appraisers; but they were never requested to act, and never qualified or acted as such appraisers, but two other persons, not appointed by the court, appraised the said lot, and falsely reported to the probate court that the value of said lot was only $3,000, and that the value of the plaintiffs' interest therein was only $699, and no more, when in truth and in fact said lot was then of the cash value of $5,700, and the rental value of said property was $120. The value of the interest and estate of plaintiffs at the time of the appraisal and sale thereof was $3,607.32, subject to their mother's life estate therein of the value of $2,092.68, all of which facts said guardian Christina Fischer and her husband, Henry Fischer, well knew. On January 12, 1888, said Christina Fischer sold at private sale to her said husband the interest of said plaintiffs in said lot for the sum of $699, to be paid in cash, falsely representing to said court that the value of the whole of said premises was only $3,000, and that the interests of her wards were only of the value of $699. The fact that Henry Fischer, the purchaser of said property at the private sale, was the guardian's husband was withheld from said court, and it had no knowledge of said fact; nor did said Christina Fischer join in said sale, or convey her interest therein, as she had proposed that she would do in her said petition for the sale of said lot.

The guardian's sale was confirmed by the probate court, but, as the trial court finds, through the fraudulent representations of Christina Fischer and Henry Fischer, and their concealment from the court that they were husband and wife. The guardian's deed to Fischer was dated January 30, 1888; but she never filed any account of her guardianship with said probate court, and was never discharged by said court. The plaintiffs had no knowledge of such

sale, or of the proceedings which led up to it, until the month of December, 1895. The defendant Carolina Fischer is the present wife of Henry Fischer, and he claims to be the owner of said lot, subject to the lien of two mortgages thereon held by some of the defendants; and, as they were innocent parties, no hostile claim is made against them, and the trial court found in their favor, and the plaintiffs' rights in the property are subject to such liens. There are 75 separate findings of fact by the trial court, but we have stated the more salient ones, and, as we think, sufficiently so to a clear understanding of the case, save as they may be referred to in discussing the legal questions involved.

G. S. 1894, § 4605, provides that:

"No executor, administrator or guardian making the sale shall directly or indirectly purchase or be interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void."

It seems to us a very plain proposition that where a wife, as guardian of her infant children, sells to her husband their interest in a homestead estate, she is interested, if not directly, at least indirectly, in the sale. These children, under the statute, would have a right to occupy the homestead jointly with their mother until they became of lawful age. If their interest was lawfully sold to the husband, this right of occupancy on their part would cease, and the mother and her husband could occupy it exclusively. The purchase of their estate in the homestead by the husband would not cut off the mother's right therein, as she was then the lawful wife of Fischer, and, when he purchased the children's right, her right to remain on the homestead was inviolate, as well as his right to do so by virtue of his purchase. It may be said that in case of such sale the purchase price would belong to the children in lieu of their right of occupancy and income from their share or portion of the homestead. But that is not the question involved. In case of a valuable homestead producing a large income, such as a large hotel, store, or productive farm, the temptation for the wife and husband to procure absolute and exclusive control of the property, as against the rights of the minor children, by a sale of their interests therein by her, as guardian, to her husband, and especially to her second

husband, not the father of her children, might be very great, and lead to gross injustice, especially where such husband has great influence over the wife, as appears to have been the case at bar. And the temptation of the guardian mother to get exclusive control of such property as the children grew older, and possibly able to care for themselves for years before they arrived at full age, might be a great inducement for the mother, as such guardian, to sell to her husband their interest, and perhaps do so at a sacrifice of the infants' interest. In this view of the case she would have an interest, and perhaps we might appropriately say a direct interest, in the sale of such property or estate to her husband.

But there are other cogent reasons why in such sale to the husband she should be deemed to be interested personally. If the husband who purchased the children's estate should hold the property as a homestead, and there were no children, issue of such marriage, then upon his death, the wife surviving him, she would be entitled to the entire property, no matter how valuable. If the property was not a homestead, then, in case of his death, she surviving him, she would be entitled to one-third of said property in any event, and if there was no child and no lawful issue of any deceased child of the husband living at his death, he dying intestate, then the whole of such estate would descend to her. It therefore follows that a wife, as guardian of her minor children, in selling their real estate or their interest therein to her husband comes within the inhibition of said section 4605 of the General Statutes above quoted, and such sale is void. Not only does the statute prohibit any such sale, but it seems to be a general rule that any direct or indirect interest in the purchase by the guardian renders the sale void. Gary, Prob. Law, § 856.

It is apparent that self-interest conflicted with fiduciary duty, or that other considerations not conducing to the welfare and best interest of her wards influenced her in making this sale in violation, not only of the spirit, but of the letter, of the law. Public policy ought not and will not tolerate such misdoings on the part of a guardian of infant children. And when the relation of the parties, and the facts attending the transactions, appear as they do in this case, it is a safe rule for the courts to set aside the conveyance,

whether absolute fraud was intended by the guardian or not, especially where the sale is made in private, and not at a public auction. Even if fraud is not proven on the part of the guardian and the purchaser, the law seems to be imperative that a sale made by a guardian is void where she is interested in the purchase of any part of the real estate so sold. It might be difficult to prove fraud in many instances, and the poison be left to work its disastrous effect by reason of the infirmities of human testimony; hence the statute declares its mandatory rule where the fact of the guardian's interest, either direct or indirect, appears in the purchase.

If the premises are held by one who purchased them in good faith, a different rule might apply as between the wards and the purchaser. If Henry Fischer was not the promoter of this scheme to have the wards' interest sold to him by the guardian for much less than it was worth, he was an active participant in the transaction. He was active in getting Snyder and Kruth to appraise the property, who do not appear to have been appointed by the court to do so, and after other appraisers had been duly appointed, but who were never asked to make appraisement, and never did so, and no explanation was given therefor. When the appraisement was made the interest of the plaintiffs therein was worth $3,607.32, and within 10 days thereafter Fischer, under oath, stated that the property was worth $5,500 at a cash valuation, and yet he purchased the minors' interest for $699. Of course he knew the plaintiffs were minors, that the mother was selling their interest in the lot, and, as he was presumed to know the law, he had notice that as his wife she had no right as guardian to sell to him the wards' property, because she would be interested in the sale. The record conclusively shows that he does not hold as one who purchased the premises in good faith.

Other questions have been raised and discussed, and we have examined them, but it is not necessary to pass upon them in the determination of this case. Whatever Henry Fischer has paid, laid out, and expended is allowed him by the trial court upon the evidence adduced, and the incumbrances upon the premises are duly provided for by the decree of the court below. No one appeals but Henry Fischer, and it appears that he has received from rents and

money obtained by placing mortgages upon the premises the sum of $720.98 in excess of the sum paid by him for the purchase price of said land, improvements and taxes.

Our conclusion is that the order appealed from should be aff :med. So ordered.

MITCHELL, J.

This is an action for the recovery of real estate sold by a guardian, within the meaning of G. S. 1894, § 4611. Its provisions are not confined to actions of ejectment, pure and simple. Hence the limitation of time applicable to the action is the one prescribed by the section referred to, viz. any time within five years after the disability of infancy is removed. It follows that this action was not barred. Where a guardian sells the real estate of her ward to her own husband, she is interested in the purchase, within the meaning of G. S. 1894, § 4605, and the sale is voidable at the election of the ward. As the husband is bound to know the law, and must know his relation to his own wife, it follows that he cannot in such case be a bona fide purchaser, within the meaning of the law. This is decisive of the main issues in the case, and it becomes wholly immaterial whether the numerous findings of the court as to actual fraud, conspiracy, the value of the property, etc., are or are not sustained by the evidence.

It being determined that the plaintiff was entitled to recover the property, the only question that remained was as to the terms upon which a reconveyance should be decreed; that is, what allowances should be made to the defendant for the money paid to the guardian at the sale, or for money subsequently paid for improvements upon it, and what deductions, if any, from this should be made for his use, and occupation of the premises. The court made itemized findings, showing specifically what he allowed the defendant and with what he charged him. The only objection which counsel urge in their brief against these findings is the general one that they erroneously proceed upon the theory that the mother of these children, who was also their guardian, was bound to support them out of her own estate during their minority, and that the court ought to have allowed the defendant for what they owed the mother's

estate for their maintenance during that time. Whether the mother was or was not bound, under the circumstances, to support the children is wholly immaterial. Conceding that she was not, but did so either gratuitously or otherwise, there is no principle of law by which defendant is entitled to the benefit of this as an offset to the plaintiffs' claim, or as a charge upon the land. In answer to the claim that it appears that the defendant paid the guardian $700 on account of the land, in addition to the $699, for which he purchased at the guardian's sale, we would say that there is no evidence that defendant ever paid the guardian a dollar for the wards' interest in the premises, except the original $699. I therefore concur in the conclusion that the order appealed from should be affirmed.

CANTY, J.

I concur with MITCHELL, J. And, while I do not think that the amounts which defendant Henry Fischer received from the rents and the mortgage which he has placed on the premises exceed by $720 the amounts which should be allowed him for improvements, taxes, purchase price, and interest thereon, I am of the opinion that the former amounts are at least as great a sum as the latter.