# SAMUEL JAMES BOPST v. EUGENE F. WILLIAMS, BESSIE B. WILLIAMS et al., Appellants.

### Division One, April 9, 1921.

1. **JURISDICTION: Appointment of Guardian: Collateral Attack.** An allegation that plaintiff minor and his mother were not residents of a certain county in Oklahoma, but of an adjoining county, and that therefore the county court of the particular county had no jurisdiction to appoint a guardian for him, is a collateral attack, and cannot succeed, when made in a suit in this State to annul the guardian's sale of the minor's lands.

2. **GUARDIAN: Married Woman: Competent to Sell Real Estate.** A married woman, competent under the laws of the foreign state of her residence to be guardian of a minor child residing there, may be permitted by the probate court of this State to sell the minor's lands. The statute (Sec. 411, R. S. 1919) does not require the foreign guardian to possess the qualifications required of a resident guardian, but only requires that the non-resident minor shall have "a guardian in the state or territory in which he resides."

3. **GUARDIAN'S BOND: Signed by Attorney: Civil Action.** The statute of Oklahoma prohibiting licensed attorneys from signing bonds as surety "in any civil or criminal action" has no application to a guardian's bond filed in the probate court of this State. It was not given in a "civil action."

4. **SALE OF NON-RESIDENT MINOR'S REAL ESTATE: For Reinvestment.** Section 411, Revised Statutes 1919 (Sec. 49, R. S. 1855), says that "when a non-resident minor, owning real estate in this State has a guardian in the state or territory in which he resides, the probate court in the proper county may authorize his guardian to sell such real estate and receive the proceeds thereof;" and that and the preceding sections do not confine the sale to the sole purpose of supporting and educating the minor, nor is the power to sell limited to a sale for any stated purpose; nor is a sale by the foreign guardian invalid because the petition and the order say a sale and reinvestment in the State of the guardian's and minor's residence would be to the best interest of the minor, for those things are not required by the statute to be stated in either.

5. ———: **Contingent Remainder.** A contingent remainder in lands is a vendible interest by a person *sui juris* or under execution,

despite the fact that the person or persons who will ultimately take cannot be determined until the death of the life tenant; and if the apparent remainderman is a minor, his contingent interest can be sold by his guardian when properly authorized by the probate court.

6. ————: Payment of Purchase Price: Dissipation. The failure of the guardian to account in the proper court for the purchase price of the minor's land, or the dissipation or embezzlement. of it by the guardian, does not concern the grantee if the sale was otherwise good; and a recital in the probate record, repeated in the deed, of the receipt of the purchase price in cash cannot be disproved to defeat the title of an innocent purchaser, without notice and for value, from the purchaser at the sale.

7. ————: Appraisal of Contingent Remainder. Where the life tenant's interest was computed at a sum substantially less than its value when computed by the statutory tables, and the minor's contingent interest was appraised at a sum in excess of the value of an in-defeasable and vested remainder, the appraisal furnishes no basis for an attack upon the sale by the guardian of the minor's contingent interest.

8. ————: Sale to Guardian. Under the statute, and in the absence of a statute, a purchase by the guardian of the minor's real estate, directly or indirectly, even though approved by the probate court, and even though the sale is at a fair price, is ground, in itself, upon which the interested party may avoid the sale; and whether the deed be held void on its face, or only voidable, is immaterial in a suit in equity in which all the facts showing plaintiff's right to avoid the sale are set up in the petition.

9. ————: Sale to Guardian's Husband. A sale of the minor's land by the guardian to her husband is voidable in a suit by the minor to set it aside, under the statute and at common law, even though it was at the appraised value and confirmed by the court. And although she had a life estate which would preclude dower vesting in her, yet whatever interest her husband took by her guardian's deed she would have been entitled to share by election under our statutes had she survived him; and on the ground of prospective interest, and on the additional ground which arises out of the nature of the marriage relation, she should be considered a purchaser "indirectly."

10. ————: ————: Innocent Purchaser. The relation between the guardian and vendee may be shown by the records through which defendant derains title; and where the decree in partition recites that the guardian and W. E. Shenk are "husband and wife" and says that she has a life estate and her minor child a remainder in

the land set off to them, and she as guardian of the minor sells the minor's interest to "William E. Shenk" and Shenk's deed to defendant contains a recital of the relationship of William E. Shenk and his wife (the said guardian), the defendant purchased with notice that the grantee in the guardian's deed was her husband.

11. ———: **Allowance for Improvements.** Where the trial court held that the guardian's deed conveying the land should be set aside, and the plaintiff did not file a motion for a new trial nor appeal, he cannot be heard to complain in the appellate court of the amount allowed to defendant for improvements.

Appeal from Atchison Circuit Court.—*Hon. John M. Dawson,* Judge.

AFFIRMED.

*L. D. Ramsay* and *H. B. Williams* for appellants.

(1)  The court erred in finding that the purchaser did not pay for the land at guardian's sale. The guardian's deed recited payment of the purchase money. Our statute makes such deed prima-facie evidence of the recitals therein contained. Kerney v. Vaughan, 50 Mo. 286; Sec. 435, R. S. 1909; Sec. 11927, R. S. 1909; Exendine v. Morris, 8 Mo. App. 383. There is no evidence or circumstance that contradicts the prima-facie case above mentioned. (2)  Our statute is: "nor shall the guardian or curator become the purchaser, either directly or indirectly, of any of the property of his ward sold." In Burton v. Compton, 150 Pac. 1080, the Oklahoma court held guardian's deed made to his wife absolutely, void, on the ground that he would, at her death, inherit one-half of her property and, therefore he was interested in the sale. The court cited the Kansas case of Frazier v. Jenkins, 57 L. R. A. 575. This case in Kansas also held such a deed absolutely void, and both cases decided that because the deed was void rather than merely voidable, it could be attacked in a collateral proceeding. Both the Oklahoma case and the Kansas case above cited, cite as authority for the decision: Tyler v. Sanborn, 128 Ill. 136, and Davore v. Fanning, 2 Johns. Ch. 252. In both these

cases cited, the deeds under similar circumstances were held to be voidable only and not absolutely void, and in the Fanning case the purchase money was ordered refunded as a condition precedent to setting the deed aside. Our case must be tried by the law of Missouri. Whatever be the law of Kansas and in Oklahoma, in this State, the order approving the sale by the probate court is a final judgment of the probate court, is in the category of *res judicata*, and cannot be reached by collateral attack. Covington v. Chamblin, 156 Mo. 587. It is well settled law of this State that final judgments of the probate court in matters within their jurisdiction, are as conclusive as those of courts of general jurisdiction. Camden v. Plain, 91 Mo. 117; Rowden v. Brown, 91 Mo. 429; Price v. Springfield R. E. Assn., 101 Mo. 107; Sherwood v. Baker, 105 Mo. 472; Macey v. Stark, 116 Mo. 481; Rogers v. Johnson, 125 Mo. 202; Cox v. Boyce, 152 Mo. 576. As late as 1876, an administrator was permitted to buy at his own sale in Missouri. Grayson v. Weddle, 63 Mo. 539; Strauss v. Ranheim, 59 N. Y. Supp. 1054; Crawford v. Gray, 30 N. E. 885; Epperson v. Postal Tel. Co., 155 Mo. 346; Hoffman v. McCracken, 168 Mo. 343. (3) In the petition we are not charged with notice that the court in Oklahoma had no authority to appoint, or that the law of that state forbade an attorney signing the bond, or that an attorney did sign the bond, nor that the purchaser was husband of the guardian, nor that he failed to pay the purchase money to the guardian, and were not charged with notice of consequent damages to plaintiff. Without such notice, this defendant is an innocent purchaser. Shelton v. Franklin, 224 Mo. 363. The evidence in the case cannot supply lack of necessary allegations in the petition. Shelton v. Horrell, 232 Mo. 358, 371; Dorrance v. Dorrance, 242 Mo. 668. (4) This very matter was presented to the probate court by plaintiff's mother, plaintiff's guardian, plaintiff's representative, and the probate court considered and passed on it. Donnell v. Wright, 147 Mo. 647. (5) To vitiate a judg-

ment because fraudulent, the fraud must be actual as contradistinguished from a judgment obtained on false evidence, or a forged instrument on the trial. Nichols v. Stevens, 123 Mo. 116; Dorman v. Hall, 124 Mo. App. 9; Leiber v. Leiber, 239 Mo. 34; McDonald v. McDaniel, 242 Mo. 176; Cross v. Gould, 131 Mo. App.. 602; Hamilton v. McLean, 169 Mo..70; Pelz v. Bollinger, 180 Mo. 258; Covington v. Chamblin, 156 Mo. 587.   (6) "To allow the heirs or anyone else, in a collateral proceeding, to question the correctness of the judgment of the court, would só imperil the titles conveyed at administrators' sales of lands that no prudent man would bid their value." Courts do not favor it because against public policy and the weight of authority. Carr v. Spanagel, 4 Mo. App. 284; Pearson v. Murray, 230 Mo. 167; McClanahan v. West, 100 Mo. 324; Jopling v. Walton, 138 Mo. 485.   (7)   The Probate Court of Atchison County had general, original and exclusive jurisdiction of the parties and the subject-matter. The guardian made application to sell, under Section 441, and introduced her evidence as required by that section, that the court might examine it and judicially determine therefrom whether to exercise his jurisdiction. It passed on that very question. It is *res judicata,* not subject to a collateral attack. Johnson v. Beazley, 65 Mo. 250; Sims v. Gray, 66 Mo. 616; Scott v. Crews, 72 Mo. 261; Camden v. Plain, 91 Mo. 129; Rowden v. Brown, 91 Mo. 429; Brawford v. Wolfe, 103 Mo. 395; Williams v. Mitchell, 112 Mo. 308; Rogers v. Johnson, 125 Mo. 213; McKinzie v. Donnell, 151 Mo. 450; Cox v. Boyce, 152 Mo. 582; Desloge v. Tucker, 196 Mo. 601; In re Estate of Jarboe v. Jarboe, 227 Mo. 99; Pearson v. Murray, 230 Mo. 167; Dorrance v. Dorrance, 242 Mo. 662.   (8)   It is urged below by plaintiff that guardian sold ward's land to her husband, and for that reason the sale was void. The authorities relied on by plaintiff to sustain that contention, held that a guardian may sell the ward's land to

287 Mo.—21

husband or wife of guardian, provided the guardian pro-cures an order from the court authorizing such sale, prior to selling. The courts of this State have held time and again that an administrator is regarded as the officer or agent of the court in making the sale, and that sales of real estate under order of the probate court are judicial sales, and the confirmation of such sales by the probate court is the crowning act and covers all prior irregularities, provided, of course, that the court had obtained jurisdiction of the subject-matter and over the parties. It follows that, if the court, with knowledge of the facts, may make such order prior to the sale, it can, when such facts are conveyed by the report of the sale made by guardian, the court's agent, ratify the same by an approval of the sale. Blickensderffer v. Hanna, 231 Mo. 110; Noland v. Barrett, 122 Mo. 188. So that if the court knew the husband purchased and approved the sale, it is good, and if he did not know it, and approved the sale, it is good.

P. C. Simons and Hunt & Bailey for respondents.

(1)    The jurisdiction of probate courts is regulated by statute, and they are courts of limited jurisdiction; there is no statute authorizing them to exercise equitable jurisdiction. Jenkins v. Marrow, 131 Mo. App. 288. (a)    They have no common law or equity powers. They are purely creatures of the statute, and where there is no statute giving them power to act and they do not act within their implied powers, such act is without jurisdiction and coram non judice. They possess only such powers as are conferred on them by statute. St. Louis v. Hullsat, 175 Mo. 79; Ford v. Talmage, 36 Mo. App. 65; Bradley v. Woener, 46 Mo. App. 371; Nicholas v. Rayburn, 55 Mo. App. 1.    (b)    Inferior tribunals, not proceeding according to the course of common law, are confined to the authority given them by statute, and the grounds of their jurisdiction must affirmatively appear on the face of the proceedings. State v. Metzger, 26 Mo.

66; Sawyer v. Burris, 141 Mo. App. 112; State ex rel. v. Johnson, 138 Mo. App. 306. (2) A purchaser at a judicial sale purchases at his peril. The maxim, *caveat emptor,* applies to all such sales. And a sale by an administrator, executor or curator under the order of the probate court is a judicial sale. Talley v. Schlatitz, 180 Mo. 238; Froley v. Bulware, 86 Mo. App. 674; Hewett v. Weatherby, 57 Mo. 276; Mann v. Best, 62 Mo. 491; Throckmorton v. Penby, 121 Mo. 50. (3) Every instrument filed in the office of the recorder, for record, shall, from the time of filing same, impart notice to all subsequent purchasers, and, if they fail to discover the defect in the title to the land, they are without remedy. R. S. 1909, sec. 2810; Miller v. Whitson, 40 Mo. 97; Crane v. Dameron, 98 Mo. 567; Weir v. Cordez, 186 Mo. 388; Williams v. Butterfield, 214 Mo. 412. When the conditions which the law declares shall constitute constructive notice are shown to exist, the presumption of such notice is conclusive, and no evidence will be permitted to overthrow or impair it. Prewitt v. Prewitt, 188 Mo. 675. One who has notice of a fact which ought to have put him on inquiry and which he might have discovered by using due diligence, cannot claim to be a purchaser without notice. Siches v. Bombousek, 193 Mo. 113; Scott v. Gordon, 109 Mo. App. 695; McAdo v. Wright, 128 Mo. App. 358. (4) The administration laws and the laws governing curators or guardians (of late years the first term having been embraced in the latter, to much confusion) are *in pari materia,* and must be construed together. Laney v. Browning, 112 Mo. App. 195. The title to the land was in the respondent, and not in his guardian, Edith P. Shenk. Zellers v. Surety Co., 210 Mo. 86; Silierst v. McNally, 223 Mo. 505. (5) If the court had no jurisdiction of the subject-matter, or the person, or if the court exceeded its powers or acted outside of its implied powers, it being an inferior court not proceeding according to the course of the common law, in either event, the judgment may be attacked collaterally, for a judg-

ment so rendered is void, a nullity. Freeman on Judgments (3 Ed.), p. 112, secs. 117, 120. Stark v. Kirchgraber, 186 Mo. 633; Hutchison v. Shelby, 133 Mo. 400; Cloud v. Inhabitants of Pierce City, 86 Mo. 356; Adams v. Cowels, 95 Mo. 501; Davis v. Montgomery, 205 Mo. 271; Moss v. Fitch, 212 Mo. 484; Land Co. v. Land Co., 187 Mo. 420. (6) Judgment rendered outside the issues presented· by the pleading or where court pleadings on their face do not give the court jurisdiction, the judgment is void. Blackburn v. Bolan, 88 Mo. 81; Strouse v. Dennan, 41 Mo. 289; State ex rel. v. Bird, 253 Mo. 569. (7) The County Court of Blaine County, Oklahoma, had no jurisdiction to appoint a guardian or curator for this respondent. Neither the curator, nor the ward, lived in Blaine County, Oklahoma, but in Garfield County, Oklahoma, fifty miles northeast of Blaine County. The bond given was a nullity. The court who took it knew it was a nullity, and Baker, the attorney for Edith P. Shenk, so stated to the court at the time it was filed, and stated that a new bond would be filed. Yet the court certifies this spurious bond to the Probate Court of Atchison County. We are forced to believe, from this record, that William E. Shenk, the moving spirit, Ed. Baker and Judge Malcomb were·in a conspiracy and colluded together to rob this infant child of its patrimony. Moss v. Fitch, 212 Mo. 484; Morx v. Force, 51 Mo. 69; Gofer v. Stover, 59 Mo. 87; Hester v. Frank, 189 Mo. App. 40; Barlow v. Steel, 65 Mo. 612. (a) The proceedings of the Probate Court of Blaine County, Oklahoma, can be attacked collaterally. If a judgment from another state should be brought here and suit instituted on it, the plea of *nil debit* would be good defense against it. Freeman on Judgments (2 Ed.) p. 586, secs. 559, 560, 561, 562 and 563; Callahan v. Griswold, 9 Mo. 784; Morx v. Force, 51 Mo. 69; Ward v. Quintiven, 57 Mo. 425; Napton v. Yeater, 71 Mo. 358; Bradley v. Welch, 100 Mo. 258; Wonderly v. Lafayette Co., 150 Mo. 635. (8) At the time land was sold married women could not act as curator. R. S. 1909, sec. 417. This section is mandatory.

A foreign curator or a foreign judgment has no extra
judicial rights over a domestic curator of judgment.
The real estate of a minor can only be sold in strict
compliance with the statutes authorizing the sale, and
then only for the purposes mentioned in the statute.
R. S. 1909, secs. 171, 431, 432, 433, 439, 449 and 441;
Bomfort v. Lucas, 21 Mo. 598; Williamson v. Monroe,
125 Mo. 574; Bone v. Tyrell, 113 Mo. 175; Chamber's
Admr. v. White's Heirs, 40 Mo. 483; Walls v. Fleming,
19 Mo. 454; James v. Russik, 12 Mo. 63. (a) They must
show that the statutes have been complied with. Plaster
v. Graber, 160 Mo. 669; Cooley on Torts (1 Ed.), p.
523; Stevenson v. Kilpatrick, 166 Mo. 262. (b) A
curator stands upon the same grounds as a trustee. A
curator is, in law, a trustee, and is charged in handling
trust property with vigilance and solicitude. Kent's
Commentaries (1 Ed.), 438; Hynds v. Hynds, 274 Mo.
123; Van Raettle v. Epstein, 202 Mo. 173; Stitt v. Stitt,
205 Mo. 155. (c) Where the rights of infants are in-
volved, courts will not search for technical rules to
sustain the transaction. Winter v. K. C. Cable Co., 73
Mo. App. 193; In v. Steel's Estate, 97 Mo. App. 9.

JAMES T. BLAIR, J.—This is an appeal from a
judgment of the Atchison Circuit Court, which holds
invalid a guardian's sale of land and cancels certain
deeds.

James A. Campbell, who died in 1889, devised his
lands to his four children in equal shares, except that
he provided the share of Edith P. Campbell should go to
her for life and at her death should go to her bodily
heirs.   In 1900 Edith P. Campbell married one Logan.
Respondent was born of this marriage.   In 1902 Edith
P. Logan, nee Campbell, divorced her husband, and, in
1904, married William E. Shenk in the State of Okla-
homa.   Respondent is her only child.   August 26, 1907,
heirs of two of James A. Campbell's devisees began suit
to partition the lands he devised.   There were numerous
defendants; among others, "Edith P. Shenk and W. E.

Shenk, her husband, and James Logan'' (this respond-
ent) ''a minor.'' The land was divided in kind, and
that involved here was allotted to Edith P. Shenk for
life, remainder to her bodily heirs, as provided by the
will. December 19, 1907, Edith P. Shenk was appointed
guardian of respondent by the County Court of Blaine
County, Oklahoma. She gave bond in the sum of $8,000,
signed by Ed. Baker and W. E. Shenk as sureties. In
January, 1908, Edith P. Shenk filed in the Probate Court
of Atchison County her application, as foreign guardian,
for an order to sell the interest of respondent in the land
in suit. She accompanied this with authenticated copies
of the record of her Oklahoma appointment and of the
bond given in that State. The order of sale was made
January 20, 1908. The interest of respondent was ap-
praised at $3600. February 12, 1908, Edith P. Shenk
reported she had sold respondent's interest to William
E. Shenk for $3600 at private sale. The sale was ap-
proved and a deed executed and delivered pursuant there-
to. May 9, 1908, William E. Shenk and Edith P. Shenk,
his wife, conveyed the land in suit to W. A. Williams,
who conveyed to appellant E. F. Williams in January,
1909. The latter executed a trust deed to the corporate
appellant. In 1913 Edith P. Shenk died. Subsequently
William E. Shenk was appointed guardian of respondent
by the county court of Oklahoma. There was never any
settlement or accounting made to the Oklahoma court
by either guardian. The only papers or records are those
of about the time Mrs. Shenk was appointed and the
subsequent appointment of Shenk to succeed her. An
aunt of respondent, Mrs. Bopst, discovered that Shenk
was inattentive to the rights of her nephew, whom she
thereafter adopted and of whose affairs she took charge.
At her instance this suit was begun. Respondent took
the name of his adoptive mother.

The petition assails the transfer of the property by
the guardian and the subsequent deeds on many grounds.
Some of these go to the jurisdiction of the County Court
of Blaine County, Oklahoma, to appoint Mrs. Shenk

guardian of her son, and some to the jurisdiction of the Atchison County Probate Court to order the sale of the land in suit. The sale is also attacked for fraud on several grounds. Details are subsequently given.

I.  Respondent urges that the evidence shows he and his mother did not live in Blaine County, Oklahoma, but in an adjoining county, and that this deprived the County Court of Blaine County of jurisdiction to appoint a guardian. Let it be assumed it would be so in that State. Respondent's petition in this case expressly alleges he and his mother were residents of Blaine County. Further, the evidence which indicates the contrary was not offered to make this issue. It was incidental. The same witness testified in support of the allegation of the petition. In any event, this particular attack is collateral and cannot succeed. [Cox v. Boyce, 152 Mo. 1. c. 582; Langley v. Ford, 171 Pac. 1. c. 472, 473.]

*Jurisdiction.*

II.  It is urged that since our statute then in force (Sec. 417, R. S. 1909) did not permit a married woman to be curatrix of the estate of a minor and since Edith P. Shenk was a married woman, she had no power to act in this State in the proceeding to sell respondent's interest in the land in suit. It is not contended her married state affected her competency under the law of Oklahoma, in the State of residence of herself and of respondent. The Missouri statute which authorizes a foreign guardian to proceed to sell in this State property or interests of his non-resident ward does not require that such guardian shall possess the qualifications necessary to appointment in this State as guardian or curator. With respect to that the sole requisite is that the non-resident minor shall *have* "a guardian in that state or territory in which he resides;" and if that condition is met, so far as concerns this present contention, a probate court in this State is authorized to permit the foreign guardian to sell. [Sec. 411, R. S. 1919.]

*Married Woman.*

. III. Respondent contends the Probate Court of Atchison County was without jurisdiction to order the sale because the bond of the guardian, given in Oklahoma, was signed by the guardian's attorney and there is **Guardian's Bond.** a statute in that State which, he insists, renders this bond void for the reason it was so signed. The bond was signed by Edith P. Shenk, as principal, and W. E. Shenk and Ed. Baker, as sureties. Baker was a practicing lawyer of Oklahoma and represented Mrs. Shenk in the proceedings for her appointment as guardian in that State. The statute referred to reads as follows:

"Licensed attorneys of this State are prohibited from signing bonds as surety in any civil or criminal action, in which they may be employed as counselors, pending or about to be commenced in any of the courts of this State, or before any justice of the peace. All such bonds shall be absolutely void and no penalty can be recovered of the attorney signing the same."

Without Baker's signature the bond would not have been good for the amount required by Section 411, Revised Statutes 1919. The bond in this case does not fall within the statute quoted. It was a guardian's bond. Respondent assumes the bond was given in a "civil action." A "civil action" implies adversary parties and an issue or issues and is designed for the recovery or vindication of a civil right or the redress of some civil wrong. [Berry v. Berry, 147 Ind. 176; Iowa v. C., B. & Q. R. Co., 37 Fed. l. c. 498; In re Battle's Est., 158 N. C. 388; Lanning v. Gay, 70 Kan. 353; Ex parte Bailey, 1 Okla. Cr. R. l. c. 119; Maben v. Rosser, 24 Okla. l. c. 598; 1 C. J. sec. 8, p. 930; 1 R. C. L. sec. 11, p. 325.] In many states, e. g., Oklahoma, statutory definitions of like tenor have been adopted. "An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." [Sec. 5536, Comp. Laws, Okla. 1909.] Secs. 5537, 5538, 5539

and 5540 of the same Laws read as follows: "5537. Special proceeding.—Every other remedy is a special proceeding." "5538. Kinds of action.—Actions are of two kinds: First, Civil; Second, Criminal." "5539.— Criminal Action. A criminal action is one prosecuted by the State as a party, against a person charged with a public offense, for the punishment thereof." "5540. Civil Action.—Every other is a civil action." When the actions defined in Section 5539 are subtracted from all actions, as defined in Section 5536, the remainder defines "civil actions" in a manner ofttimes approved. The Constitution of Oklahoma excludes probate causes from the term "Civil Action." [Welch v. Barnett, 34 Okla. l. c. 170.] We do not mean to be understood as taking judicial notice of the statutes of Oklahoma. Those statutes are cited as typical and as, in fact, containing the ordinary definition of a civil action. The act respecting sureties which was offered in evidence clearly shows that "civil actions" exist in the State of Oklahoma. Since the statutes quoted were not offered in evidence, it is necessary to turn to the general definition of the words. That definition makes it clear that the bond involved in this case was not a bond given in a civil action; and, of course, there is no contention it was given in a criminal action. Such statutes are not extended by construction to subjects not within their purview. [Halfacre v. State, 112 Tenn. l. c. 611, 612; Lewis v. Higgins, 52 Md. l. c. 618.] It follows that the statute in evidence does not extend to guardians' bonds.

IV. The petition for the sale of the minor's interest alleged, among other things, that on account of reasons stated in detail, "it would be to the best interest of said minor . . . to sell" his interest in the land in question, transfer the proceeds to Oklahoma, where both guardian and ward resided, "there to be invested in other lands. . . ." in the ward's name. The prayer was for an order of sale "for the purpose aforesaid." In the order of sale it is stated and found that "the rents and profits of

Sale for Reinvestment.

said land so situated'' (as set out in the petition) ''are wholly insufficient to pay the charges and expenses necessary to support and educate said minor.''   It further recited that it was shown the proceeds could be invested in Oklahoma to ''much greater advantage   and to the greater interest of said minor.'' ·

Respondent insists the probate court had no power to order a sale of a non-resident minor's realty for reinvestment; that such a sale could be ordered solely for the support and education of such minor.  His position seems to be that Section 409, Revised Statutes 1919 (Sec. 439, R. S. 1909), is the only section giving power to sell such non-resident minor's realty, and that Section 411, Revised Statutes 1919 (Sec. 441, R. S. 1909), is designed merely to provide safeguards for a sale under Section 409.  The right of a foreign guardian to deal with the real property his non-resident ward owns in this State depends, in so far as concerns the question ·· now being considered, upon the existence of statutory authority.  As early as 1845 (R. S. 1845, pp. 554, 555) the statute permitted a foreign guardian of a non-resident ward to remove such ward's personalty to the State of their common residence.  At an earlier date (Sec. 8, p. 295, R. S. 1835) the statute authorized the sale of a resident minor's realty to defray the expenses of his education.  In 1855 there were added to the chapter on Guardians and Curators three sections (Secs. 47, 48, 49, pp. 831, 832, R. S. 1855) which are substantially the same as Sections 409, 410 and 411, Revised Statutes 1919.  These are the sections respondent argues were all passed for the single purpose of authorizing a sale of land for the education and support of a non-resident minor.  We do not deem this the correct construction. Section 47, page 831, Revised Statutes 1855 (now Sec. 409, R. S. 1919), made the non-resident minor's realty in Missouri available for his support and education just as the resident minor's land was already available for his education. under Section 24, page 826, Revised Statutes 1855.  Section 47 (now 409) clearly has in view

Section 8, page 823, Revised Statutes 1855 (Sec. 382, R. S. 1919), which requires the appointment of a curator for a non-resident minor owns property in this State, and contemplates his retention of such of the minor's personalty as is not ordered paid over to the foreign guardian and the payment by the curator to such guardian of the proceeds of sales of personalty and rentals of realty under proper orders therefor.    Section 48 (now 410) confirms this construction and requires the curator appointed in this State, if so ordered, to loan proceeds of sales of the minor's realty and pay over the interest to the foreign guardian from time to time.    It is obvious that Section 49 (now 411) is much broader in its language. Sections already cited provided for the removal from the State of a non-resident minor's personalty and for the discharge of the person formerly in custody of it.    It seems clear that the Legislature intended by Section 49, supra, to provide for a like transfer of the value of the non-resident's realty to the State of his residence.    The language of the section is: ''When a non-resident minor, owning real estate in this State, has a guardian in the state or territory in which he resides, the probate court in the proper county may authorize his guardian  .  .  . to sell such real estate and receive the proceeds of sale .  .  .  ''  The remainder of the section has to do with safeguards by which the exercise of this power is surrounded.    Such safeguards were and are not required under the two preceding sections, because under them the court determines the amounts proper to be paid over from time to time and retains the remainder in the hands of the resident curator.    The quoted language of Section 49 (411, R. S. 1919) is unconditional.    The power to sell is not limited to a sale for a stated purpose.    It is evident a sale for a transfer to the minor's home state was intended. .Since the statute did not condition the exercise of the power, the allegations of the petition with respect to the reasons for desiring the transfer, i. e. a more advantageous investment, are to be construed as designed to induce the probate court to

order the sale. Since no reason was required to be stated to give jurisdiction, jurisdiction was not lost because the guardian included in her petition a statement of commendable motives. The learned probate judge need not have stated in his order that the sale was for the support and education of the minor. The statute did not require it in a case like this. So far as the present question is concerned it comes down to this, i. e. that the petition and order of sale stated the facts necessary to show the statute applied to respondent's property, and then stated other things not required to bring the matter within the statute and which did not affect its applicability. This excess of statement did not invalidate the order. [Strouse v. Drennan, 41 Mo. l. c. 298; Bone v. Tyrrell, 113 Mo. l. c. 185.] The ruling in Johnson v. Beazley, 65 Mo. l. c. 258, does not affect the Strouse decision on this point.

V. Respondent also contends that though it be held the statute (Sec. 411, R. S. 1919) authorizes the sale of a non-resident minor's real estate, it did not authorize the sale of his interest in the tract in question. The words "real estate" when used in a statute include "lands, tenements and hereditaments" (Ninth Subd. of Section 7058, R. S. 1919) and the statute applicable to this case contains no exceptions. [Ancell v. Bridge Co., 223 Mo. l. c. 220 et seq.] Whether or not respondent's interest was an estate in lands, it was an interest vendible by a person *sui juris* and under execution, despite the fact that the person or persons who are to take could not be determined until the death of the life tenant. [Godman v. Simmons, 113 Mo. l. c. 127, et seq.; Summet v. Realty & Brokerage Co., 208 Mo. l. c. 514; Parrish v. Treadway, 267 Mo. l. c. 96; Stockwell v. Stockwell, 262 Mo. l. c. 686; Sikemeier v. Galvin, 124 Mo. l. c. 372; Eckle v. Ryland, 256 Mo. l. c. 440; Armor v. Lewis, 252 Mo. l. c. 589.] Under the doctrine of this court (Oldaker v. Spiking, 210 S. W. l. c. 62, 63) such an interest when owned by a minor legally can be sold under proper orders of the probate court.

*Sale of Contingent Remainder.*

VI.   It is contended the purchase price was not actually paid and that, therefore, the sale was and is void.   The evidence relied upon to show non-payment seems to be that tending to show the guardian did not account for the money in the County Court of Blaine County, Oklahoma.   The guardian's deed recited payment in full in cash to the guardian, and that recital is prima-facie evidence of the fact.   [Sec. 404, R. S. 1919.]   The embezzlement or dissipation of the ward's money by the guardian would not concern appellants if the sale was otherwise good. [Exendine v. Morris, 8 Mo. App. l. c. 389.]   It would not, of itself, render the sale void. [Thaw v. Ritchie, 136 U. S. l. c. 548; Fritzgibbon v. Lake, 29 Ill. l. c. 178, 81 Am. Dec. 302 and note; Mulford v. Stalzenback, 46 Ill. l. c. 309; Strouse v. Drennan, 41 Mo. l. c. 299; Harper v. Smith, 89 Ark. l. c. 288.]   And a recital in the probate court record, repeated in the deed, or the receipt of the purchase price in cash cannot be disproved to defeat the title of an innocent purchaser, without notice and for value, from the purchaser at the sale.   [Worthington v. Dunkin, 41 Ind. l. c. 525, 526; Cottrell v. Cottrell, 7 Ky. L. Rep. l. c. 672, 673.]

*Payment.*

VII.   The life tenant was twenty-five years of age when the sale was made.   The whole property was appraised at $9,000.   The ward's interest therein was appraised at $3600.   The value of the life estate was therefore computed at $5400, which is substantially less than its value when computed by the statutory table. [Chap. 70, R. S. 1919.]   The contingent interest of respondent was thus appraised at a sum in excess of the value of an indefeasible and vested remainder in the whole property.   There is no claim the land was then worth more than $9000.   The appraisal furnishes no basis for an attack upon the validity of the sale.

*Appraisal.*

VIII.   Section 402, Revised Statutes 1919, provides: "The court may order such real estate to be sold at public or private sale, or it may, in its order, provide

that the guardian may sell at either public or private sale, at his option; but in no case shall the same be sold for less than three-fourths of its appraised value, nor shall the guardian or curator become the purchaser, either directly or indirectly, of any of the property of his ward sold under the provisions of this article.''

Sale to Guardian's Husband.

In Miller v. Staggs, 266 Mo. l. c. 456, it was held that under this section a sale for less than three-fourths of the appraised value of the ward's realty was void. The decision approves a former decision (Carder v. Culbertson, 100 Mo. 269) in which it was held with respect to a like sale under the then existing statute respecting sales by curators, that the confirmation of the sale was *coram non judice* and the deed showing the sale for less than the prescribed sum ''was void on its face.'' Whether the express provision in the succeeding section (Sec. 403, R. S. 1919) to the effect that the court shall not approve a sale for less than three-fourths of the appraised value of the property distinguishes the clause in Section 402 relating to appraised value from that respecting a purchase by the guardian is a question it is not deemed necessary to determine in this case. Even without such a statute as Section 402, a bill in equity will lie to set aside, after confirmation, a sale at which the person selling purchases either directly or through another. It is a fraud for which, in any event, an interested party may avoid the sale. [Rorer on Judicial Sales, secs. 572, 573, 574.] In the cases subsequently cited it will be found there is some authority for the proposition that at common law such a sale is absolutely void. Other authorities hold such sales voidable. In view of the character of this proceeding it is unnecessary to decide in this case whether the rule is one or the other. The facts showing the right of respondent to avoid the sale on the ground that the guardian had an interest in the purchase are all set up in the petition. The suit is in equity, and this mode of setting aside a sale and deeds of guardians to themselves is authorized

by the decisions holding such a sale voidable only. That such a purchase by the guardian, directly or indirectly, is ground, in itself, upon which an interested party may avoid the sale, even in the absence of a statute, is well settled. [Davoue v. Fanning, 2 Johns. Ch. R. l. c. 255, et seq.; Scott v. Gamble, 9 N. J. Eq. l. c. 236; Michoud v. Girod, 4 How. 552; Kruse v. Steffens, 47 Ill. 112; Bland v. Fleeman, 58 Ark. l. c. 90; Houston v. Bryan, 78 Ga. l. c. 185.] The rule is "not remedial but preventive," and the fairness of consideration in a particular case cannot be shown to affect its applicability. [James v. James, 55 Ala. l. c. 531; O'Connor v. Flynn, 57 Cal. l. c. 295, 296; Grubbs v. McGlawn, 39 Ga. l. c. 675; Gilmore v. Thomas, 252 Mo. l. c. 155; Calloway v. Gilmer, 36 Ala. l. c. 362; Michoud v. Girod, supra; Lockwood v. Mills, 39 Ill. l. c. 608; Davoue v. Fanning, supra; Scott v. Gamble, supra.] "The rule . . . applies in all its force to guardians, and the disqualification attaches to the fiduciary character, independent of the mode of sale, the incapacity extending as well to judicial or other sales under adverse proceedings, as to those made by the guardian under his powers as such." [Calloway v. Gilmer, 36 Ala. l. c. 359.] In that case the sale had been made under order of the probate court and was set aside. A like case is Cain v. McGeenty, 41 Minn. 194.

The particular ground upon which the petition in this case proceeds on this point is that the rule applies to the sale in question because the purchaser was the husband of the guardian. In Gregory v. Lenning, 54 Md. l. c. 58, it was held the husband of the guardian might buy at a sale of the ward's land, because "the sale was not made by the guardian to her husband, but was made by the court through its trustee." In Davoue v. Fanning, supra, the sale was for the purpose of raising a particular legacy for the executor's wife. The executor "by previous arrangement, suffered the property to be bought in" for her. Chancellor Kent said: "Whether a trustee buys in for himself or his wife, the temptation to abuse is nearly the same. . . . His in-

terest here interfered with his duty. . . . Indeed, the very fact that the executor, in that instance, was exercising the general powers of his trust for the benefit of his wife, was peculiarly calculated to touch and awaken the suggestion of self-interest. The case, therefore, falls clearly within the spirit of the principle, that if a trustee, acting for others, sells an estate, and becomes himself interested in the purchase, the *cestui que trust* is entitled to come here, as of course, and set aside that purchase.'' In Strauss v. Bendheim, 162 N. Y. l. c. 476, the court recognized this general rule, but refused to apply it where the record showed (1) the sale was confirmed with full knowledge of the relation, (2) the *cestuis que trustent* did not attack the sale, (3) the question was not raised until twenty-six years later, and (4) then raised by an apparent stranger to the proceedings as an objection to the marketability of the title in a suit to compel his specific performance of a contract to purchase. In Tyler v. Sanborn, 128 Ill. l. c. 143 et seq., it was held that a sale by an agent to his wife, the principals being without knowledge of the relation, fell within the rule and was voidable. It was said that the husband still had an interest in his wife's property, by virtue of certain statutes, which would vary by virtue of the increase or decrease of the wife's interest in realty during coverture, and that her emancipation did not leave him disinterested therein; that, further, their relation was such, in itself, as to enlist his interest in her material welfare, independently of his financial interest therein and thereby bring his interest into conflict with his duty in a sale to her. In Louden v. Martindale, 109 Mich. 242, the husband of the administratrix bought at her sale. The court did not discuss the effect of the relation. It seems not to have been in the mind of the majority of the court as a feature to distinguish the case from one in which no such relation between seller and buyer existed. The case was ruled upon the question whether the husband's

reconveyance to his wife was proof of a purchase for her. One judge dissented. He briefly stated he thought ''the sale by Mrs. Burns, as administratrix, to her husband, by which, if authorized, at least an inchoate right of dower would vest in her was invalid.'' The majority did not discuss or mention this suggestion. In Brown v. Fischer, 77 Minn. 1, an infant and another sued in the district court to set aside a probate court sale of the infant's realty. The mother of plaintiffs had a life estate in the property, and plaintiffs took the remainder under their father's will. The mother became plaintiffs' guardian and secured an order to sell their interest. She sold, at private sale, to her husband, plaintiffs' step-father, and confirmation was secured through concealment of the relation the guardian and purchaser bore to each other. A Minnesota statute was in force which prohibited a guardian from directly or indirectly purchasing or being interested in the purchase of any part of the real estate he sold. It was held that the statutory rights of a wife in her husband's property, contingent upon her surviving him, gave her such an interest as to bring the sale within the prohibition of the statute and of the common-law rule, and a finding against the validity of the sale was affirmed. In Frazier v. Jeakins, 64 Kan. 615, a guardian of minors, under order of sale by the probate court, sold at private sale to her husband. The sale was confirmed. Subsequently the guardian and her husband sold to Frazier, who bought with notice. It was held the sale was void. On the question in the instant case it was held the wife's interest under Kansas statutes in realty owned by her husband invalidated the sale under a statute resembling Section 402, Revised Statutes 1919. The general rule was quoted and held to apply. It was held that while the statutory rights referred to were not common law estates they were, nevertheless, property, and that the relation, itself, of husband and wife, was of a character to bring duty and interest into conflict, the thing which both the statute and the general rule sought to prevent. The court cited several decisions.

287 Mo.—22

It quoted from Bassett v. Shoemaker, 46 N. J. Eq. 538, l. c. 542, in which an executor sold to his wife his testator's farm: "The exclusion of the wife as a purchaser, where the husband sells as a trustee, is not so much for the reason that he may subsequently become entitled to some interest in her lands, as on account of the unity which exists between them in the marriage relation. The case falls clearly within the spirit of the principle which excludes the husband himself." In Burton v. Compton, 50 Okla. 365, the purchaser at a guardian's sale under order of the probate court was the guardian's wife. The court held the statutory interest of the husband in the wife's estate and their natural identity of interest by reason of the relation between the husband and wife brought the sale within the general rule and the prohibition of the statute law of the State. In Chastain v. Pender, 52 Okla. 133, the same holding was made in a case in which the sale had been made by an administrator to his wife. In Langley v. Ford, 171 Pac. (Okla.) l. c. 473, it was held that a guardian's sale and deed to a third person, followed by a deed from the latter to the guardian's wife, could be set aside at the instance of an interested party in an action brought for that purpose in a case in which there was shown a collusive agreement to bring about the result attained. A like holding is found in McGaughey v. Brown, 46 Ark. l. c. 32. In Georgia it was held: "The principle which renders an agent incompetent to purchase from himself renders him alike incompetent to sell to his wife. . . . No one can doubt that the husband has a beneficial though" (in Georgia) "not a legal interest in the property of his wife." [Reed v. Aubrey, 91 Ga. l. c. 438, 439.]

The statutes of this State give the wife a prospective interest in the real property of the husband. In this case the wife's life estate would preclude dower vesting in her, but in whatever interest the husband took by her guardian's deed she would have been entitled to share by election under our statutes in case she

had survived him.   The additional consideration, adverted to in the cited cases, which arises out of the nature of the marriage relation, is also of much force.   It seems to us that the application of the statute should be so made as to exclude, where reasonably possible, the violation of the principle it formulates and diminish opportunities to defraud those dependent upon the integrity of guardians for the preservation of their rights. There is nothing harsh in the statute so construed and innocent purchasers will not be harmed thereby.

There is one decision, Crawford v. Gray, 131 Ind. 53, which holds a sale made in "good faith," without "fraud or collusion" to the highest and best bidder cannot be set aside on the ground that the purchaser was the wife of the executor making the sale.   No au thorities are cited.   The statutes emancipating married women are quoted, and the ruling practically rests upon the result they have effected.   We think the rule of the cases first cited is correct and so hold.

IX.   Did appellants have notice?   They all claim under respondent.   The title they took at the time of the conveyance under which they claim were the life estate of Edith P. Shenk and the interest of respondent,

Notice.   under the Campbell will, as set off in the partition suit.   They expressly admit that in that case it was "decreed and adjudged that Edith P. Shenk and W. E. Shenk were husband and wife and that Edith P. Campbell was a daughter of James A. Campbell, deceased, and that defendant James Logan is a son of Edith P. Shenk by a former husband and is a minor." The relation between the guardian and the vendee at her sale is thus shown by the records through which the title of appellants is deraigned.   The judgment in partition bound respondent and his mother and all who claim under them. [Sec. 2023, R. S. 1919.] It was also of record in the office of the Recorder of Deeds.   [Secs. 2024, 2198, 2199, R. S. 1919.]   The documentary foundation of the title under the guardian's sale, coupled with the

recital of the relationship by William E. Shenk and his wife in the deed to W. A. Williams, dispelled any doubt which could possibly have arisen out of the use of Shenk's initials in the partition judgment and made the relationship quite clear. Appellants purchased with notice. [Seilert v. McAnally, 223 Mo. l. c. 518; Higbee v. Bank, 244 Mo. l. c. 427.] The point has been decided several times. [Burton v. Compton, supra; Frazier v. Jeakins, supra; Fisher v. Bush, 133 Ind. l. c. 321; Bank v. Walkley, 169 Ala. l. c. 652.]

X. There is support in the record for respondent's contention that the sale was collusive and actually fraudu-

Fraud.    lent, but the questions appellants present do not require further examination of that matter. Respondent complains the sum ($5000) allowed appellant Williams for improvements is excessive and illegal. Respondent did not file a motion for new trial and did not appeal. The question is not presented for consideration. The judgment is affirmed. All concur except *Elder, J.*, not sitting.