In re Estate of HENRY C. BRANCH; SUSAN M. HOWE et al., Objectors and Appellants.

**Kansas City Court of Appeals, March 4, 1907.**

1. **ADMINISTRATION: Final Settlement: Appellate Practice: Sale of Land: Evidence.** Granting that on appeal from the final settlement the appellate court is not bound by the finding of facts made by the trial court, the evidence relating to the diligence of an executrix in selling real estate under a will, is reviewed and it is found that she acquitted herself in a manner befitting her duty and that she sold for the best price obtainable.

2. ———: ———: ———: ———. Held, *arguendo*:
   (1) That the direction in a will to sell the land as soon as the same can be done without sacrifice did not lessen the executor's duty to employ diligence that would characterize the conduct of a reasonably prudent person in the management of his own affairs;

   (2) That a direction in a will to sell the land must be regarded as converting the land into money, and that the executrix takes the proceeds of the same not as a mere trustee but in her capacity as executrix.

3. ———: ———: ———: ———: **Rentals.** Evidence relating to the action of executrix in renting the land is reviewed and she is held to have rented it for a reasonable amount.

4. ———: ———: ———: ———: **Commission.** Evidence relating to an executrix waiving her commission in consideration of a certain allowance in favor of her son is reviewed and held not to sustain the waiver.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*D. D. Duggins* and *William H. Chiles* for appellants.

(1) The final settlement of a dead man's estate in the probate court is analogous to a proceeding to take an account before a master in chancery. The mode of procedure is essentially equitable in all its aspects and the

questions presented must be reviewed by this court as chancellors.    In re Meeker's Estate, 45 Mo. App. 194; In re Tucker's Estate, 74 Mo. App. 331; In re Scholer's Estate, 73 Mo. App. 301; Ferry v. McGowan, 68 Mo. App. 612; Clark v. Bettelheim, 144 Mo. 258.    (2) The clause in the will directing a sale of the land, "as soon as same can be done without sacrifice," limits only the time when said sale could be made and does not in any respect fix or affect the price at which the land could be sold.   The respondent contended in the court below that the farm could be sold at any price just so it was not sacrificed.   This is not the proper construction. The time having arrived when the land could be sold, the rule of the law attached and the executrix must use all reasonable effort to get the best price obtainable for the land.    Real estate with directions to sell becomes "assets" in the hands of the administrator, for the management and disposition of which he is accountable as for any other "assets," and the question is properly raised by objection to final settlement.    Johnson v. Johnson's Executor, 72 Mo. App. 386; Francisco v. Wingfield, 161 Mo. 542; Baldwin v. Dalton, Admr., 168 Mo. 20; Pearson v. Haydel, 87 Mo. App. 500.    (3)    Even where executors and administrators are not guilty of negligence they stand in the position of trustees and are liable for want of that degree of prudence which prudent men exercise in the management of their own affairs, and the burden of proof is on the administrator or executor to show that he exercised such diligence and prudence. Merritt v. Merritt, 62 Mo. 150; Booker v. Armstrong, 93 Mo. 49; Powell v. Hurt, 108 Mo. 513; Hays v. Fry, 110 Mo. App. 25; Hill v. Evans, 114 Mo. App. 722.    (4) But in this case in reference to the sale of the land, appellants contend that there was such an utter lack of ordinary diligence, prudence and care on the part of the executrix, as to invoke upon her the harsher rule laid down in those cases where the facts show that the admin-

istrator or executor has not done the duty required by the law. Scarborough v. Watkins, 9 B. Mon. 540, point 1; Clerk v. Hunton, 3 N. J. Chan., p. 390; Holcomb v. Holcomb's Exr., 11 N. J. Chan. 300; Schultz v. Pulver, 11 Wendell 366; Charlton's Appeal, 34 Penn. St. 473; Shaffer's Appeal, 40 Penn. St. 131.

*Alexander Graves* for respondent.

Filed argument.

JOHNSON, J—This proceeding originated in the probate court of Lafayette county on objections filed by two of the heirs of Henry C. Branch, deceased, to the final settlement made by the executrix of the estate. The three objections with which we now are concerned were found against objectors in the probate court and a similar conclusion was reached in the circuit court, to which the objectors appealed. Judgment was entered approving the settlement and taxing the costs of the proceeding in the circuit court against the objectors. From this judgment the present appeal is prosecuted.

Henry C. Branch died testate at his home in Lafayette county on March 14, 1903, leaving a widow and ten children, all of whom were of legal age at the time of his death. Some of the children, including the two objectors, were the fruit of a former marriage of the decedent, the others were offspring of his union with the wife who survived him, the present executrix.

In his last will, which was duly probated, the testator bequeathed all of his personal property after the payment of his debts therefrom to his wife and directed the executrix "to sell all of my real estate as soon as the same can be done without sacrifice and after paying to my said wife the sum of twenty-five hundred dollars to divide the residue of the proceeds of such sale between my children." Shortly after his death, his widow, who was nominated executrix in the will was granted

letters testamentary and proceeded with the administration of the estate. The personal estate proved to be more than sufficient to pay the debts of the estate and the contest before us relates to the manner in which the executrix handled and disposed of the real property under the provision of the will above quoted. This property consisted of a farm of 173.62 acres situated in Lafayette county. It had been the home of the testator and his wife for a number of years preceding his death and for about two years before that event their son, Glover, had lived on the place and assisted his father who was in poor health in farming it. Soon after her appointment the executrix rented the farm to Glover for one year at a rental of $520.80, which was at the rate of $3 per acre. It is claimed by the objectors that $3.50 per acre was the fair rental value of the place and their first ground of objection relates to this item.

On November 18, 1903, the executrix sold and conveyed the farm to Glover for $50 per acre, amounting to $8,681 for the whole farm. Objectors contend that $60 per acre was the reasonable market value of the farm at that time and their second objection has for its object the holding of the executrix to account for the land at that value.

Shortly before his death, decedent, realizing that he was justly indebted to his son, Glover, for services on the farm, delivered to him, duly signed, the following written promise:

"Lafayette Co., Mo., January 12, 1903.

"I promise to pay my son, C. G. Branch (Glover), a fair compensation for services rendered me upon the farm time commencing June 17, 1901."

It appears that Glover presented a demand against the estate for $500 for these services and that all of the heirs, including the objectors, consented to the allowance of that sum, but the objectors say their consent was obtained by the promise of the executrix to charge noth-

ing for her services and, as she charged and was allowed the compensation provided by law, they are justified in objecting to the amount of Glover's demand. They assert that the reasonable value of his services, which covered a period of about a year and three-quarters, was $250 per year, and therefore that the allowance overpays him to the extent of $62.50, with which amount they ask that the executrix be charged.

First, we will consider the second objection. On the issues involved therein, the court at the instance of the objectors gave the following declaration of law:

"The court declares that under the evidence the exceptors are entitled to have the executrix charged with the difference between the price for which she sold the lands of the deceased and whatever greater value the court may believe from the evidence the land would have sold for or was reasonably worth at the time of the sale."

In view of this declaration, the finding of the court in favor of the executrix on this objection was a finding of the fact, that under the evidence the land had been sold at its reasonable value and at the highest price obtainable. This is conceded by the objectors, but the rule is invoked "that the trial of objections to items of final settlement of administrators must be had without the intervention of a jury and that in reviewing such causes, the rules applicable to appeals in equitable actions will govern." [Finley v. Schlueter, 54 Mo. App. 455; In re Meeker's Estate, 45 Mo. App. 186; In re Tucker's Estate, 74 Mo. App. 331; In re Schooler's Estate, 73 Mo. App. 301; Clark v. Bettleheim, 144 Mo. 258.] And we are besought to make our own findings of fact from the evidence in the record before us as should be done in an equitable action. Counsel for respondent in his presentation of the issue takes appellants' on their own ground and, as our conclusion coincides with that of the learned

123 App—37

trial judge, we will consider the facts in evidence from the chosen standpoint of the parties themselves. Thus approaching them, we are impressed that the great weight of the evidence tends to show that the executrix sold the land at its reasonable market value. Witnesses for the objectors estimated the value of the farm at from $50 to $70 per acre at that time, but it was shown that the farm was cut up somewhat by ravines and contained from fifteeen to twenty waste acres, also that the improvements were of a quite inferior character. It is fair to say that the witnesses for the objectors as a rule disclosed on cross-examination that they had not made a sufficient allowance for these deficiencies, nor did they appear to be so familiar with the physical characteristics of the place or with land values in that immediate vicinity as were the witnesses for the executrix. We do not deem it important to detail the evidence and will content ourselves with the foregoing statement of the result reached from its analysis.

But counsel for the objectors argue that the executrix did not obtain the highest price for which the land could have been sold; that she not only made no effort to find purchasers, but discouraged those who approached her on the subject of purchasing the land by telling them that it was not for sale, all with the end in view of making a sale to her son, Glover, at the lowest market price. We agree with counsel that the direction in the will to the executrix to sell the land "as soon as the same can be done without sacrifice" obviously refers to the time when the land could be sold and in nowise lessened the measure of her duty when she decided to offer it for sale to employ the degree of diligence that would have characterized the conduct of a reasonably prudent person in the management of his own affairs. [Hill v. Evans, 114 Mo. App. 715; Merritt v. Merritt, 62 Mo. 150; Booker v. Armstrong, 93 Mo. 49; Powell v. Hurt, 108 Mo. l. c. 513; Hayes v. Fry, 110 Mo. App. l. c. 25.]

The absolute direction to sell is to be regarded as converting the devise of land into one of money. "Nothing is better established than this principle that money directed to be employed in the purchase of land and land directed to be sold and turned into money are to be considered as that species of property into which they are directed to be converted." And it may be stated as a fixed rule that under a direction of this character the executor does not become a mere trustee of the moneys received by him from the sale of the lands, but takes them in his capacity of executor. [Johnson v. Johnson, 72 Mo. App. 386; Francisco v. Wingfield, 161 Mo. 542; Baldwin v. Dalton, 168 Mo. 20; In re Corrington, 124 Ill. 363.] Conceding that these strict rules should be used in measuring the conduct of the executrix, we do not find that she has fallen short in the performance of duty. It was quite natural and not at all censurable that she should desire her son, who had been his father's mainstay during his last days, to have the home place instead of a stranger. Such preference, if she did not permit it to work an injury to the other heirs, could not be regarded rightly in any other light than praiseworthy and, if she determined on letting her son have the farm at the highest price she had reason to think could be obtained for it, she should not be pronounced derelict for not seeking other buyers. Many reasonably prudent persons sell lands without trying to obtain other bids when satisfied that the offer made represents full value. Some think that to place land on the market conveys the impression that it must be sold and thereby tends to depreciate its selling value. So that the advantages and disadvantages of one method over another is largely a matter of individual judgment in the exercise of which reasonably prudent persons differ. We do not feel justified in saying that the executrix was negligent because she did not pursue the method the objectors think might have produced better results. Nor do we attach any

weight to the evidence which they claim tends to show that a better price could have been obtained.

A real estate agent had a customer for another farm and approached the owner with an offer. The owner asked, "Where would I go? to which the agent replied, "You buy the Branch place for $60." That was all of the conversation and the negotiations terminated with it. After this the agent of his own motion took another person, to whom he was trying to make a sale, to the Branch farm and asked him, "What do you think about this place?" To the best of the agent's recollection, the man said he would give $55 for it. When they returned to town, they chanced to encounter Mrs. Branch. The agent accosted her with the inquiry, "Mrs. Branch, what is the least money that will buy that farm?" and she answered, "It is not for sale." The agent admitted on cross-examination he had heard that the farm had been sold to Glover at the time in question, and from his other testimony it is evident that the sale had been consummated. After the sale, one of the objectors, accompanied by her husband, went to see the executrix and in the conversation that ensued the husband said, "I am like my wife, I think you are selling it too cheap if you sell it for $50. I will give you $52.50 and I know of another man that will give you more." The reply was to the effect that the farm had been sold and the executrix "did not want to sell it twice."

It will be noticed that neither of these offers was made at a time when Mrs. Branch felt that she was in a position to consider them and, being made with knowledge of the situation on the part of the offerers, their good faith well may be doubted. That the real estate agent should go to the trouble and expense of driving out on what he describes to be a very cold day to show to a prospective customer a farm he had reason to believe had just been sold and which he had not been employed to sell smacks strongly of an act inspired by

those who thought they had an interest to serve in embarrassing the executrix and, when this was followed by the visit of one of the objectors above noted, the assertion made by her husband that he would give $52.50 for the place "and I know of another man that will give you more" plainly enough indicates the character of the fabric that was woven to ensnare the executrix. We are satisfied that the executrix, who acted always on the advice of her counsel, whose ability and integrity cannot be and are not questioned, acquitted herself in a manner befitting her duty and that she sold the land for the best price obtainable.

Equally as untenable is the first objection. The great weight of the evidence shows that $3.00 per acre was the full rental value of the land for one year. The offer of a larger rental made a month or more after the land had been rented by the same objector, who offered to buy the land at $52.50 after it had been sold, carries no other weight than to deepen our conviction that the objectors from the first were actuated by a purpose to harass the executrix in the discharge of her duty.

The third objection has even less to commend it than the others. Not only does the evidence fully sustain the reasonableness of the charge made by Glover for his services, but the objectors themselves stood by and acquiesced in the allowance of the demand as a judgment against the estate. Even should we think, as we do not, that the judgment is excessive, in the small amount claimed, to permit the objectors, on the reason assigned, to have the excess charged against the executrix would be wholly indefensible under the evidence before us. We find as a fact that the executrix did not agree to waive her compensation and this is all that needs be said on the subject. The judgment is affirmed. All concur.