## JAMES K. GILMORE v. M. C. THOMAS, Appellant.

### Division Two, July 9, 1913.

1. **DEED: Description: Mistake: Wrong Section.** An executor's deed which, through mistake, described land as in section 24 instead of section 23, did not pass the legal title to the land in section 23.

2. **EXECUTORS: Purchasing Estate Lands: Equity.** An executor who, under a power in the will and under an order of the probate court, has sold lands of the estate, cannot come into equity and uphold a claim that the grantee in his executor's deed took the legal title to hold for the executor. As executor he had no lawful right to purchase the lands of the estate directly or indirectly.

3. **EQUITY: Doctrine of Clean Hands: Invoked by Court on its Own Motion.** The doctrine that he who comes into a court of equity must come with clean hands may be invoked by the Supreme Court on its own motion.

4. **EXECUTORS: Purchasing Estate Lands: Conduit to Pass Title: Not Aided in Equity.** An executor attempted wrongfully to convey the legal title to estate lands to A to hold for himself, but made a mistake in the description so that the title did not

pass. Afterward A conveyed the land in question to B and B conveyed to the defendant. *Held*, that defendant stands in the shoes of A, who did not pay or agree to pay anything for the land and therefore had no equity in it. Moreover, as it is unlawful for an executor to purchase the estate land at his own sale, so it is unlawful for another to aid him in so doing by acting as a conduit to pass title, and having failed to get the title a court of equity will not aid him.

Appeal from Greene Circuit Court.—*Hon. George Pepperdine,* Special Judge.

AFFIRMED.

*J. H. Mason* and *Frank B. Williams* for appellant.

(1) In his report of sale the executor made affidavit that he did not directly or indirectly purchase said real estate, or any part thereof, or any interest therein, and that he was not interested in the property sold except as stated in said report. This oath cannot be overcome by loose statements, to the effect that the executor paid the purchase price and that the person to whom he sold paid nothing. Nor can they overcome the statement contained in the report and final settlement that the purchaser paid the purchase price in cash. The executor is estopped to impeach these records. Pearson v. Murray, 230 Mo. 162. The contemporaneous acts of the respondent and his sons show that they all regarded the land as having been deeded to appellant's ancestor in title. This is evidence that it was intended to have been conveyed to him. (2) The plaintiff's claim of title is without foundation. He was never in possession and has no rights as against the defendant who is in possession under claim of right and color of title. (a) The will having directed that the land be sold and the proceeds applied as personal effects, worked an equitable conversion as of the date of the testator's demise. The land did not

descend as real estate to the heirs, but passed as personal property to the executor for the benefit of certain legatees. The court therefore erred in holding that the respondent is entitled to an undivided interest in the land as tenant in common with the other heirs of James Gilmore, deceased. Compton v. McMahan, 19 Mo. App. 494; Morris v. Stephenson, 128 Mo. App. 338; Francisco v. Wingfield, 161 Mo. 542; Llewellyn v. Llewellyn, 122 Mo. App. 467. (b) The land was in the executor's possession and under his control and he owed a duty in respect to it. He was trustee with power to sell, and therefore could not become purchaser at his own sale. If he was the real purchaser then the making of the deed to a third person was a badge of fraud. Miller v. Kelsay, 114 Mo. App. 598; Thornton v. Irwin, 43 Mo. 153; Hull v. Voorhies, 45 Mo. 555; Darling v. Potts, 118 Mo. 506; 2 Woerner's Admin. (2 Ed.), sec. 487; R. S. 1909, secs. 24, 170-171. (c) A party to a fraudulent conveyance may not allege its invalidity with a view to its avoidance. McLaughlin v. McLaughlin, 16 Mo. 250; Hayes v. Fry, 110 Mo. App. 24; Larimore v. Tyler, 88 Mo. 661. (d) The respondent cannot establish title by virtue of the fact that he, as executor, was the real purchaser at the sale, or furnished the purchase money to the person to whom he sold it. He is estopped to contradict his report of sale, final settlement and deed. Pearson v. Murray, 230 Mo. 162. (e) If the executor did in fact purchase at his own sale then there was a secret trust and the pretended sale was fraudulent and the parties being *in pari delicto,* the law, in such cases, will leave them where it finds them—the defendant in possession. Mitchell v. Henley, 110 Mo. 598; Hamilton v. Schull, 25 Mo. 165; Pearson v. Murray, 230 Mo. 162; Shaw v. Shaw, 86 Mo. 594. There is no substantial evidence that the purchaser entered into the fraud, and it will not be presumed that he did so. Kilpatrick v. Wiley, 197 Mo. 123. (f) Where no better title than

possession is shown, he who is prior in time is prior in right. "The possessor hath the right against all except him who hath the very right." Duncan v. Able, 99 Mo. 188; Hall v. Gallemore, 138 Mo. 638; Bains v. Bullock, 129 Mo. 117.

*J. P. McCammon* for respondent.

(1)   The sale to S. E. Gilmore was not a bona-fide sale.   Evans v. Snyder, 64 Mo. 516; Greene v. Holt, 76 Mo. 677; Melton v. Fitch, 125 Mo. 281; Roberts v. Thomason, 174 Mo. 385.   (2)   The appellant's title derived through a quitclaim deed from S. E. Gilmore to Ennis and another quitclaim from Ennis to appellant was notice of equities. The quitclaim deed to defendant was notice to him of the equities of plaintiff. Zweigart v. Reed, 119 S. W. 960.   "Besides he purchased by quitclaim deed and the title he thereby acquired was subject to the equities of plaintiff." Condit v. Maxwell, 142 Mo. 278; Eoff v. Irvine, 108 Mo. 378; Hope v. Blair, 105 Mo. 85.   (3)   The only question before the court was as to who holds the better title, plaintiff or defendant.   This is not a question between the plaintiff and the heirs or legatees of James Gilmore.   This suit is between the plaintiff and the defendant alone, and whether either, by reason of the intestacy of James Gilmore as to this tract, or by reason of its purchase by plaintiff, indirectly and through Sterling E. Gilmore, and thereby its consequent vesting in equity in the heirs of James Gilmore the rights of the parties hereto are the only rights to be adjudicated here.   Machine Works v. Bowers, 200 Mo. 219; Dixon v. Hunter, 204 Mo. 382; Graton v. Land & Lumber Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698; Garrison v. Frazier, 165 Mo. 40; Ball v. Woolfolk, 175 Mo. 278; Charles v. White, 214 Mo. 187.

ROY, C.—This is a proceeding to quiet the title to twenty acres, the west half of the southwest quarter of the northwest quarter of section 28, township 30, range 23, in aid of which an injunction was issued to prevent defendant from cutting timber from the land pending the suit.

*Quieting Title.*

The petition alleges that defendant took possession and enclosed the land in November, 1907, and claims to own some title, interest or estate in the land.

The answer alleged that James Gilmore, deceased, is the common source of title, and that he died in 1878, leaving a will which was probated, and that he intended by the will to provide that the land should be sold by his executor and the proceeds distributed among his heirs, but that by mistake the land was described in the will as being in range 24. That the plaintiff was named in the will as its executor. That the plaintiff, as such executor, under the power in the will contained, and under an order of the probate court, sold and conveyed the land to Sterling E. Gilmore, but that by mutual mistake the land was described, as in the will, as being in range 24. That the executor charged himself in his settlement of said estate with sixty dollars, the price for which the land sold, and distributed said proceeds among the distributees of the estate. That Sterling E. Gilmore, on March 31, 1903, by quitclaim deed conveyed the land to W. P. Ennis, who, on June 27, 1907, by quitclaim deed conveyed it to the defendant. The answer then alleged that defendant is the owner in fee simple of the land and asks that the court determine the estate, title and interest of the parties and for a dissolution of the injunction.

The reply alleges that Sterling E. Gilmore did not pay anything for the land, but that plaintiff as such executor charged himself with the amount for which it sold, and paid it out to the distributees of the estate. That Sterling E. Gilmore at no time

claimed to be the owner of the land, and at no time had or held possession of it, but, from the time of the sale until his death in 1905, a period of more than ten years, acquiesced in the plaintiff's ownership of the land. The reply then alleges title in the plaintiff by adverse possession from 1894 to 1907.

The testator, James Gilmore, left three children, of whom plaintiff is one, and also left descendants of four other children.

The executor reported the sale of the land to Sterling E. Gilmore, stating that the purchaser had paid sixty dollars, the consideration, and the executor attached to the report his affidavit that he did not directly or indirectly purchase the land.

The executor's deed was dated March 2, 1895, and was acknowledged March —, 1903, and the evidence for plaintiff tended to show that it was not delivered to Sterling E. Gilmore until after its acknowledgment.

The plaintiff at various times cut timber from the land and gave permission to other persons to get wood from it. It was not enclosed until the defendant enclosed it with a single wire in 1907.

Howard E. Gilmore, a son of the plaintiff, testified that he had talked several times with his brother Sterling about the land, and that Sterling stated that the deed was made to comply with the law, and that the plaintiff had furnished the money to pay for the land, and that he (Sterling) had not paid anything for the land. Two other sons of plaintiff testified and to some extent corroborated Howard's evidence.

In 1903 the plaintiff was negotiating a sale of the land, and the mistake in the description was discovered. Sterling, who lived at Carthage, was sent for, and some effort was made to correct the title. Taxes had been allowed to accumulate against the land. The following letter was in evidence:

"Carthage, Missouri, 12-25-04.

Dear Father:

Pardon me for not writing sooner. Referring to that land matter I think I was out $26 for taxes and other expenses. If you will repay me this amount, I will give you a quitclaim deed. Then you can bring suit to quiet the title which is a very simple matter as the time limit is now expired. I am writing mother about all there is of interest. I hope your health is good and you will enjoy this bright Christmas day. We will be glad to hear from you often.

"Respectfully, S. E. GILMORE."

The evidence for defendant tended to show that at one or more times Sterling Gilmore claimed to own the land, but it did not show that he ever had possession of it, or exercised acts of ownership over it. From 1894 until 1903 the assessment books for some years showed that the owner was "unknown" and for other years during that time it was assessed to Francis Gilmore, a son of the plaintiff.

The trial court made the following finding of facts:

"I find that the plaintiff in this case is an heir of James Gilmore, deceased, and that the land in controversy never passed by the will of James Gilmore at all; that the land never came into possession of the plaintiff in this case as executor of his will to pay debts.

"I find that as a matter of law that a will cannot be in any way amended. I find that the plaintiff in the case as an heir at law of James Gilmore, deceased, has a possessory right in the land in controversy as a tenant in common with the other heirs of the said Gilmore, deceased, and therefore has a right to possession of the land in common with them. As this is not a partition suit, I do not deem it my duty to define the extent or quantity of his interests in the land.

"I find that the defendant is an entire stranger to the title, and took nothing by his deed from Ennis, and that he, Ennis, took nothing by his deed from Sterling E. Gilmore and that Sterling E. Gilmore passed nothing by his deed in the way of title to James K. Gilmore.

"I further find with reference to the doctrine of estoppel, that the plaintiff is not estopped as against the defendant, and that estoppel has nothing whatever to do with the case. It would have to be raised by the other heirs of James Gilmore, deceased.

"At the request of the defendant, I further find as a matter of fact, that M. C. Thomas at the time of the institution of this suit and filing of the petition, was in possession of the land in controversy under color of title, but without any right, whatever, and was virtually a trespasser. I find that the land was not cultivated; I do not find that it was uncultivatable land, and my judgment will be for the plaintiff without defining his rights specifically, setting out his interest as being nothing more than that of a tenant in common with other heirs of James Gilmore, and I further adjudge that the injunction in the case be made perpetual," and entered a decree accordingly.

We will not pass on the question as to whether the will of James Gilmore can be so construed or corrected that it may be held to create a power in the executor to sell the land in controversy. It is conceded that the land was misdescribed in the will. It was also misdescribed in the executor's deed to Sterling E. Gilmore. Regardless of the mistake in the will, the executor's deed did not, to say the least of it, convey the legal title to Sterling, for the simple reason that it did not describe the land, but instead described land six miles away. Whatever right either plaintiff or defendant may have under that deed is an equitable right and not a legal one. We will examine the claim of each

Misdescription in Deed.

to an equitable interest in the land under the executor's deed.

I. The plaintiff claims that he furnished the money, sixty dollars, to pay for the land; and that the deed was made to Sterling under an arrangement between them that Sterling was to convey it to the plaintiff. In other words, the plaintiff asks that the conveyance to Sterling be upheld, but that Sterling's grantees be adjudged to hold the land in trust for the plaintiff. The trouble with the plaintiff is that, not having clean hands in that matter, he cannot get into a court of equity to have such a trust declared. He was executor of the will; and as such he had no lawful right to purchase the land of the estate directly or indirectly.

*Purchase by Executor at His Own Sale of Estate Lands: Not Aided in Equity.*

In Davoue v. Fanning, 2 John. Ch. 252, Chancellor KENT, in discussing the rule forbidding a trustee from purchasing the property of the estate said: "However innocent the purchaser may be in the given case *it is poisonous* in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. . . . It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale."

By section 32 of chapter 122 of the General Statutes of 1865 it was provided that an executor or administrator could not become the purchaser of land sold for the payment of debts for less than its appraised value. In the revision of 1879, section 166, it was provided that the executor or administrator should not

directly or indirectly become the purchaser of land sold for the payment of debts. Thus, after experimenting with a different rule, our Legislature has deemed it wiser to revert to the old one.

In Pearson v. Murray, 230 Mo. 162, the right of one who had sold land as administratrix, and who sought to show that the purchaser had taken title under an agreement to hold it for such person, was denied. There is no difference in principle between a sale under a power in the will and a sale under the order of the probate court. In case of sale to pay debts made under the order of the court, the executor is required to make affidavit that he did not become the purchaser. Where a sale is made under a power in the will no such affidavit is required. Yet the moral and legal obligation resting upon the executor not to become such purchaser is the same in both cases.

The doctrine that he who comes into a court of equity must come with clean hands may be invoked by this court on its own motion. [Creamer v. Bivert, 214 Mo. 1. c. 485.] We, therefore, decline to enforce any equity plaintiff may claim to hold under the sale to Sterling E. Gilmore.

**"Clean Hands."**

II. Defendant has no claim which this court will enforce. He stands exactly in the shoes of Sterling E. Gilmore, who did not pay or agree to pay anything for the land, as we find the fact to be, and therefore had no equity in the land.

It was held in Pearson v. Murray, supra, that where a person as administratrix conveyed land to another, and made affidavit that she did not directly or indirectly become the purchaser, she could not impeach the deed or affidavit by showing that she was the real purchaser and had paid the purchase money. The rule laid down in that case is a sound one. Such is not the case here. The purchaser at

**Executor's Conduit to Pass Title not Ended in Equity.**

the sale in this case did not get the title, and the defendant, claiming under the purchaser, is here asking for equitable relief.

He cannot get relief for two reasons. He has no equitable right, and he is subject to the same rule which we have applied to the plaintiff. As it is unlawful for an executor to purchase the estate land at his own sale, so it is unlawful for another to aid him in so doing by acting as a conduit to pass the title. Having failed to get the title, this court will not assist him in doing so. It will leave the parties just where it finds them. The rule is laid down in 16 Cyc. 146, as follows: ''In the same manner, under a great variety of circumstances, equity has refused to aid either party, where both are participants in a transaction in fraud of a third person, either to carry out their arrangement, to set it aside, or to relieve in any way in reference to it.''

Such being the case, we must hold that the rights of the parties are just as they would have been if no sale by the executor had ever been made. That leaves the defendant without any right or title, legal or equitable, and leaves the ownership of the land in the devisees or heirs of James Gilmore.

We agree with the trial court on all the other facts found by it, and we affirm the judgment. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All of the judges concur.