**Linda K. TRIGG, Appellant,**

v.

**George O. HERNDON, Administrator of the Estate of Roy Herndon, Respondent.**

No. WD 34531.

Missouri Court of Appeals, Western District.

July 3, 1984.

Gwendolyn M. Wells, Kansas City, for appellant.

Keith S. Bozarth, Jones & Scott, Columbia, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

Linda Trigg, daughter of the decedent and beneficiary under his last will and testament, protested the interim settlement of the executor, George Herndon, in the probate division of the circuit court. The objection was to the sale at public auction of a Cadillac sedan for $4,500 to one Joanna Herndon, wife of the executor. The formal objection was that the transfer, without consent of the sole residuary beneficiary of the will, was a breach of fiduciary duty and a violation of § 473.477, RSMo 1978. The probate division of the circuit court denied the contention after evidence, and beneficiary Trigg appeals.

The pleading of beneficiary Trigg prayed that approval of the interim settlement be withheld, that the court order the sale of the Cadillac set aside, and for other just orders. The purchaser at auction, Joanna Herndon, wife of the executor, was not joined as a party, and at the conclusion of the evidence counsel for beneficiary Trigg conceded that, on that account, the court was without jurisdiction to set aside the sale, but was confined to reimbursement to the estate for any loss from the irregular transaction.

The evidence was that on March 30, 1982, the Cadillac was offered at public auction, after publication of notice in a local newspaper, and sold to Joanna Herndon, wife of

the executor, for the high bid of $4,500. There were numerous other bidders, one car dealer among them, but they refused to offer more than $4,000. The evidence was also that some short time before the auction, one Arthur Bush, a longtime neighbor of the decedent, offered the executor up to $6,200 for the vehicle but was told that the car was not for sale. Herndon explained that he did not consider the Bush inquiry an offer. He explained to Bush, nevertheless, that "a deal on the car" was already consummated with beneficiary Trigg to sell the car to wife Joanna. There were other conversations between them about the purchase of the Cadillac, but executor Herndon told Bush that beneficiary "Linda [Trigg] and I had made a deal verbally." The executor made no mention thereafter of the auction which impended. The witness Bush acknowledged that the money [$6,200] was not in hand, but that an application for loan to the credit union, and approval, would be required. A loan for $10,000 was eventually approved, but for the purchase of a new automobile.

■ Section 473.477, RSMo 1978 provides:

*Executor or administrator not to purchase, exception*

No executor or administrator shall purchase any property belonging to the estate which is sold either at public or private sale, unless written consent thereto is filed by the distributees.[1]

The judgment of the probate division to deny the objection of the beneficiary was not accompanied by findings of fact and conclusions of law. [None were requested.] The judgment does not inform therefore, whether the denial of redress was on the premise that the conduct of the executor was not a violation of § 473.477, or that the violation notwithstanding, there was no substantial evidence of the fair market value of the Cadillac at the time of the auction, and hence a failure of proof of damages. The court observed and the beneficiary conceded—as we note—that wife Joanna, holder of the title to the automobile, was not a party to the proceedings, and hence not subject to the adjudication of the court. The trial was conducted on the theory that redress, if at all, was limited to reimbursement to the estate of any proven loss from a sale by auction to the wife for less than the fair market value.

The trial court was entitled to conclude, on the principle of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), that the inquiry for the purchase of the Cadillac by neighbor Bush was not an offer for contract [*see Gray v. Toledo, St. L. & W.R. Co.,* 143 Mo.App. 251, 128 S.W. 227, 229 (1910)] for the Cadillac and that, in the absence of other evidence, no market value was proven in excess of the $4,500 bid and paid for the vehicle by wife Joanna.[2] We assume such a determination.

The interdiction that an executor may not purchase estate property at a sale unless the distributees give written consent is peremptory. The question remains whether such a transfer by an executor to this

---

1. The predecessor statute, § 463.300, and other more remote predecessors, provided: "No *real estate* sold for the payment of debts shall be sold at private sale for less than three-fourths of its appraised value, *nor shall the executor or administrator at public or private sale, directly or indirectly become the purchaser* of such real estate; and all sales not made in accordance with the provisions of this section shall be null and void." The 1955 revision—present § 473.-477—deletes the *real estate sold for the payment of debts* as well as the *directly or indirectly* limitations.

2. There was a *whit* of testimony by Herndon which suggests a *written agreement* between the executor and beneficiary Trigg for the sale of the Cadillac to wife Joanna for a specified sum: "Linda [Trigg] and I had agreed to the wholesale price on the car, $5,000, and I have a letter showing that she wrote me this letter saying, I agree to sell you the car for $5,000...." That undeveloped retort was not allowed by the court because not responsive to the question. [It should be noted that this Herndon testimony of a *written agreement* with the beneficiary for the sale to the wife contradicts the other testimony by Herndon that he told Bush the beneficiary Trigg and he "had made a deal verbally."] There was no other evidence of value, nor was the written agreement for sale ever offered at the trial. That evidence, of course, would have validated the transaction under § 473.477.

wife amounts to a transaction with himself within § 473.477 and so also violates the statute.

The beneficiary frames contentions [and the executor responds] in terms of a statute which interdicts an executor, *directly or indirectly,* from the purchase of estate property. The beneficiary argues that the sale of such property by an executor to a spouse, *per se,* constitutes an indirect purchase by the executor proper. The executor argues that in the absence of some irregularity of procedure or actual benefit to the executor from the transaction, a spouse stands as any other bona fide purchaser. The *directly or indirectly* terminology of our former statutes [since the enactment of § 166 in 1879 and characteristic of comparable statutes of that era in other states] was discarded in the 1955 revision. *See Gilmore v. Thomas,* 252 Mo. 147, 158 S.W. 577, 579 (1913); *Earney v. Clay,* 516 S.W.2d 59, 65 (Mo.App.1974); and Annot. 131 A.L.R. 990 (1941). The preponderance of our decisions during that span dealt with the *directly or indirectly* term of the successive enactments, and so that terminology pervades the appellate decisions the litigants cite to the question.

The rule that a purchase by a fiduciary of estate property, *directly or indirectly,* affords an interested party ground to avoid the sale was a principle of equity antecedent to embodiment in any statute, and continues in effect. *Bopst v. Williams,* 287 Mo. 317, 229 S.W. 796, 801[2] (1921); *see* for development of the principle the discussion in *Davoue v. Fanning,* 2 Johns Ch R 251 (1816). In such a case, equity intervenes to prevent a conflict of interest between the fiduciary and the subject of trust. *Michoud v. Girod,* 4 How. 502 (1846) l.c. 554:

The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.[3]

■ Our § 473.477 expresses a kindred policy *Wortham v. Marten,* 354 Mo. 1, 188 S.W.2d 11 (1945), l.c. 12:

The statute is an expression of public policy that it is unwise to permit the possibility of an administrator or executor making an unjust profit at the expense of the estate in his trust.

Our decisions give effect to the successive statutes and the equity they embody to

**3.** The term *directly or indirectly* [or variant], later embodied in the typical statute, was itself a formulation of the courts of chancery: "[A]n agent or trustee cannot, directly or indirectly, become the purchaser of the trust property which is confided to his care." *Michoud v. Girod,* supra, l.c. 555. Or, "An executor selling land in the execution of a trust expressed in the will, either at public or at private sale, or under an order of the court, cannot, either directly or through the agency of another, become the purchaser or interested in the purchase, at such sale." *Scott v. Gamble,* 9 N.J.Eq. 218, 236 (1852).

allow a beneficiary to set aside a sale of property to an executor [whether by direct deed or through a conduit], and hence to deny that fiduciary any benefit of the transaction. Thus, in *Greene v. Holt,* 76 Mo. 677 (1882), a deed to estate property by one coadministrator to the other was declared in violation of the extant statute, and void. In *Barnard v. Keathley,* 230 Mo. 209, 130 S.W. 306 (1910); *Gilmore v. Thomas,* 252 Mo. 147, 158 S.W. 577 (1913) the sale of estate property by the executor to a son who then reconveyed to the fiduciary was, in the former case, set aside and, in the latter, denied legal effect. In *Wortham v. Marten,* supra, a deed from the sale of estate property conveyed by the executor to another and then reconveyed to the executor was set aside as void. The invalidity of such a transaction, the court said with emphasis, did not depend upon proof of damages to the estate.

The question whether a sale, otherwise bona fide, by an executor of estate property to a near relative also violates the interdiction of the statute and equity has been treated with ambivalence by our courts. Only three decisions on the subject are reported in Missouri, and each treats a different kinship.

*In re Branch's Estate,* 123 Mo.App. 573, 100 S.W. 516 (1906), the heirs objected to the sale of estate property by the executrix to her son. In preface to judgment the court noted the evidence that the son sustained the father during his last years, and assisted to work the farm. The court noted also that the sale from the executrix mother to the son was for the best price obtainable. The court then responded to the objections—without other rationale or discussion of principle [l.c. 518]:

> [W]e do not find that she has fallen short in the performance of duty. It was quite natural, and not at all censurable, that she should desire her son, who had been his father's mainstay during his last days, to have the home place, instead of a stranger. Such preference, if she did not permit it to work an injury to the other heirs, could not be regarded rightly in any other light than praiseworthy; and, if she determined on letting her son have the farm at the highest price she had reason to think could be obtained for it, she should not be pronounced derelict for not seeking other buyers.

The opinion cites neither the statute nor the rule of equity which prohibits an executor from the purchase of estate property, nor whether the principle of either impinged upon the transaction with the son.

In *Earney v. Clay,* 516 S.W.2d 59 (Mo. App.1974) the heirs objected to the sale of estate property by the executor to his parents. The contention was that the transaction was merely a pretense to place title in the executor. The court responded that there was no evidence that the transaction was feigned, nor was the possibility that the executor, a son, might some day inherit from the parents invoke the prohibition of the statute. The rationale of the decision drew an implicit distinction between the *per se* validity of a sale from an executor to the parents and from an executor to a spouse. The former transaction, in the absence of evidence, does not allow a presumption of a benefit to the executor, whereas the latter does [l.c. 56]:

> Neither did the evidence suggest that the executor, by selling to his parents, would become vested with any beneficial or legal interest in the property *as where an executor or guardian sells property at his own sale to his own spouse. Bopst v. Williams,* 287 Mo. 317, 229 S.W. 796 (1921). [emphasis added]

Only one decision, *Bopst v. Williams,* 287 Mo. 317, 229 S.W. 796 (1921) treats the question on appeal. That case—cited by *Earney* parenthetically—involved the sale by a guardian to her spouse of interests of the minor ward in some lands. The court set aside the transaction as in violation of both the rule of equity and the extant statute which prohibited a fiduciary from the purchase at her own sale. The court adopted as the ground of opinion the expoundments of *Michoud v. Girod, Davoue v. Fanning* and *Scott v. Gamble,* all supra, that equity discountenances such transac-

tions to avert the fiduciary from the enticements of self-interest at the expense of the duty owed the cestui que trust.

The executor contends here, however, that there was no evidence the sale of the Cadillac to the wife subserved a personal end, or that any beneficial or legal interest accrued to him from the transaction. It is the natural identity of interest the marital relation engenders, however, and not an incidence of actual benefit, which brings a sale of estate property by a fiduciary to the spouse within the prohibition of the statute and rule of equity. It is to forfend "the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence and supersede that of duty," [*Michoud v. Girod*, supra, l.c. 55] and not to remedy an advantage actually gained, that prompt the general policy of equity and the express policy of the statute to intervene. *Bopst v. Williams*, supra, l.c. 801; *Wortham v. Marten*, supra, l.c. 12. Thus, apart from any interest which may accrue to one spouse from the ownership of property by the other [l.c. 802]:

> The additional consideration ... which arises out of the nature of the marriage relation, is also of much force. It seems to us that the application of the statute should be so made as to exclude, where reasonably possible, the violation of the principle it formulates, and diminish opportunities to defraud those dependent upon the integrity of guardians for the preservation of their rights.

The principle that a transaction by a fiduciary to the spouse of estate property bespeaks a self-sale, and hence a conflict of interests, percurs the law of trusts: Restatement (Second) of Trusts § 170 (1959), comment e. *Sale to a third person:* "If the third person is a spouse of the trustee, the sale can be set aside as though it were made to the trustee himself." That is the rationale which sustains *Bopst v. Williams*, supra, and those reasoned precedents cited to the issue. *See also* Annot., 131 A.L.R. 990 (1941).

The wisdom of a policy which treats a spouse as the fiduciary proper to disarm the temptation to self-deal is apparent from the record before us. There was no proof that the sale of the Cadillac to the wife was contrived for the personal benefit of the executor. Notwithstanding, the conduct of the executor, however unwitting, was disposed to the advantage of the purchase by the wife at the expense of an unfettered sale. Albeit the show of interest by Bush in the Cadillac may not have been sufficiently formulated to amount to a legal offer to buy [as the trial court was free to find, and we assume, did implicitly find], the peremptory declarations by the executor that the car was not for sale because beneficiary Trigg had already agreed with wife Joanna for that transaction could not but have chilled Busch from any further interest. That the sale to Joanna at the public auction [even were the testimony of the executor of the agreement with Trigg beyond cavil] was to the disadvantage of the estate is apparent from the very terms of the sale at auction: $4,500—whereas the very testimony of the executor was that the price Trigg agreed to was "the *wholesale price on the car, $5,000*." [emphasis added] However innocent of personal interest the motive of the transaction by the executor to the wife, his own testimony confirms that [as equity and the statute know] the intimacy of the spousal relation inevitably leads to a merger of interests. Thus, asked whether the wife had improved the Cadillac after the purchase, the executor testified: "*We* bought two more new tires, a new battery, *we* tuned it up and ... [*w*]e had to have the lights fixed. Approximate cost ... Well, around $300 ... I think they were MFA tires *I* bought for her, a tune-up job, approximately $50 and a battery at Sears approximately $73." [emphasis added]

We conclude that the sale of the estate property by the executor to the wife was a violation of § 473.477 and, under the state of the pleadings and posture of the issues, entitles the beneficiary Trigg to assert a claim for damages for any money loss from the irregular transaction. The evidence at

the trial was not substantial on that issue, but proof is readily available, and the cause is remanded for that purpose. A written consent between the sole distributee, *Trigg,* and the executor for the purchase by the wife, by the express terms of the statute, validates such a transaction. The executor will have opportunity to prove what his testimony only intimates as to such a consent and performance.

The cause is reversed and remanded for further proceedings.

All concur.