**In the ESTATE OF Lee MINGS, Incapacitated and Disabled now deceased, Jean Goldstein Conservator Ad Litem, et al, Respondent,**

v.

**Clifford MINGS, Appellant.**

No. WD 56426.

Missouri Court of Appeals,
Western District.

Dec. 14, 1999.

Jean Goldstein, Private Atty., Columbia, all other parties acting pro se, respondent.

Susan Robertson, Columbia, for appellant.

Before: Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge RIEDERER.

LOWENSTEIN, Presiding Judge.

The issue at the center of this case is whether an authorized public sale of a protected person's real estate by a conservator, to the conservator's son, where the conservator has made a gift of the purchase price to the purchaser, violates the prohibition against a conservator becoming an indirect purchaser of the protectee's property. § 475.235, RSMo 1994. (All further statutory references are to the Revised Statutes of Missouri, 1994). The appellant, Clifford Mings, conservator of his father's estate, filed a final settlement of that estate after his father's death. At the hearing on the final settlement, a previously concluded and approved sale of real estate to Appellant's son was disallowed. The conservator filed this appeal, claiming he had not indirectly purchased the property. Appellant additionally contends the setting aside of the sale was invalid because proper notice was not afforded to interested parties and that the

court's denial of his request for conservator compensation was improper.

## I. FACTS

On April 6, 1984, the Circuit Court of Boone County determined Lee Mings was totally incapacitated and appointed his son, Appellant Clifford Mings, his guardian and conservator. During the years of his conservatorship, Appellant sold, with court approval, various parcels of property contained in Lee Mings' estate. On April 9, 1996, Appellant filed a petition seeking approval to sell the last remaining parcel of real estate by public sale, as the estate did not contain sufficient assets to provide for Lee Mings' continued care.

On May 13, 1996, a hearing was held on Appellant's petition to sell the remaining parcel of land. The heirs, although notified, did not appear, nor did any interested person file an objection to the proposed sale. Appellant testified the estate was running at a deficit and sale of the property would be in the best interest of the estate. Appellant proposed a public auction at the courthouse in Wright County. The petition to sell the real estate was sustained.

On August 9, 1996, public sale of the real estate was held. The only bid on the property was made by Appellant's son, Andrew Mings, who bid $17,000.00. Appellant later testified that other people were at the courthouse trying to get enough money together to bid on the property, but they could not beat Andrew Mings' bid. Appellant filed a report of sale on August 14, 1996, stating that Andrew Mings purchased the property at a bid of $17,000.00 cash. Appellant requested the sale be confirmed and approved.

Appellant filed an affidavit with the court on September 4, 1996, stating that he had no interest, direct or indirect, in the sale of the real estate. He further stated that the land would be held in the name of Andrew Mings, who had supplied the consideration for the sale, and that Andrew Mings was Appellant's son and the grandson of Lee Mings.

On September 6, 1996, the court entered an order confirming the report of sale of the real estate and ordering execution of the deed to Andrew Mings. The court noted the report had been on file for more than ten days and no interested person had filed any objection to the sale. The sale and the consideration paid were approved. Appellant was authorized to execute and deliver to Andrew Mings a deed conveying to Andrew title to the real estate. Title was then transferred.

The protectee, Lee Mings, died on May, 1, 1997. On July 17, 1997, Appellant filed a final settlement of the estate with the court, along with supporting documentation. Contained in the documents attached to the final settlement, was a copy of a cashier's check from Appellant to Andrew Mings, dated October 7, 1996, in the amount of $17,000.00. Appellant additionally requested conservator and attorney's fees.

The court set March 9, 1998, to hear the final settlement and request for fees. Andrew Mings did not receive notice of the final settlement, however, he did receive notice of the hearing on conservator compensation. A conservator ad litem was appointed on March 3, 1998. No heir or interested person, other than Appellant and the conservator ad litem, appeared at the hearing.

Appellant testified that neither at the time he executed the affidavit, nor at the time of hearing, did he ever have a direct or indirect interest in the property. He testified that he gave his son Andrew the $17,000.00 as a gift to do with as he pleased, it was not a loan. Appellant paid $56,000.00 for his daughter's college education and wanted to give his son something as well. Further, Appellant testified he gave Andrew the money to buy the land because it was a family farm, but that Appellant did not want nor need the land, and that there was no agreement for An-

drew to transfer the property to Appellant at any time.

The conservator ad litem testified that she called the Wright County courthouse the morning of the hearing and found the property was still titled in Andrew Mings' name. Further testimony established that Andrew lives on the farm and carries his own insurance. Appellant paid the 1996 and 1997 real estate taxes on the property because Andrew was not very good about paying bills, and Appellant wanted to make sure the taxes got paid.

Additionally, Appellant testified he had served as conservator of the estate since April 1993 without compensation. The court had previously approved Appellant's requests for compensation for the years 1984 to mid–1993.

The court disallowed the previously approved sale of property to Andrew Mings. Appellant's request for compensation was denied and Appellant was ordered to pay the conservator ad litem's fees. On August 17, 1998, the court made final the judgment on the disallowance of the sale, the non-approval of the final settlement and the fee allowance.

Appellant timely filed a notice of appeal to this court, against respondent, the conservator ad litem. Appellant's claims on appeal are: (1) it was error to disallow the previously approved sale of real estate to Andrew Mings because Appellant did not directly or indirectly purchase the property, (2) it was error to disallow the sale of real estate at the hearing on the final settlement of the estate because proper notice was not afforded to interested parties, and (3) it was error for the court to deny Appellant's request for conservator compensation and to require Appellant to pay the conservator ad litem's fees.

## II. STANDARD OF REVIEW

On appeal from a judge-tried case, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Gaar v. Gaar's Inc.,* 994 S.W.2d 612, 616 (Mo.App.1999) citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This court will not set aside a judgment on appeal unless firmly convinced that the judgment is wrong. *Lenger v. Lenger,* 939 S.W.2d 11, 13 (Mo.App. 1997) citing *Fulton v. Adams,* 924 S.W.2d 548, 551 (Mo.App.1996).

## III. ANALYSIS

### A. Direct or Indirect Purchase of the Real Estate

It is Appellant's first point that the probate court erred in disallowing the sale of real estate to Andrew Mings because Appellant did not directly or indirectly purchase the property. Section 475.235, that part of the probate code dealing with court ordered sales of real estate involving trusts and estates of decedents and persons under disability, reads as follows:

> The court may order the real estate sold at public or private sale, or it may, in its order, provide that the conservator may sell at either public or private sale, at his option; but in no case shall the same be sold for less than three-fourths of its appraised value, *nor shall the conservator become the purchaser, either directly or indirectly, of any of the property sold under the provisions of this law.*

(Emphasis added). It has never been contended that Appellant directly purchased the real estate. Appellant did not bid on the property nor does his name appear on the title to the land. *See Watkins v. Floyd,* 492 S.W.2d 865 (Mo.App.1973) (Sheriff's sale of real estate void where sheriff bid on property at sale and titled the property in the name of himself and his son). What is unclear is whether or not Appellant *indirectly* purchased the real estate. In deciding the issue, this court must examine those cases which define the boundaries of an indirect purchase of real estate. In so doing; the court notes the rule whereby a conservator may not

directly or indirectly purchase real estate at his or her own sale is analogous to the rules whereby an executor, administrator, guardian or sheriff is prohibited from doing the same.

First, the sale of property in the case at bar must be distinguished from those indirect purchases of real estate which have clearly been held invalid by Missouri courts. Sales between spouses have repeatedly been held invalid by the courts of this and other states. In *Bopst v. Williams*, 287 Mo. 317, 229 S.W. 796 (1921), the Supreme Court of Missouri held invalid a sale of real estate made by a guardian to her husband, stating that the "nature of the marriage relation" made the wife an interested party in the sale and was in violation of the statute prohibiting such. In *Trigg v. Herndon*, 673 S.W.2d 831 (Mo.App.1984), this court held voidable an automobile sale by an estate executor to his wife, reasoning that "the intimacy of the spousal relation inevitably leads to a merger of interests." *Id.* at 835. *See also, e.g., Reed v. Aubrey*, 91 Ga. 435, 17 S.E. 1022 (1893); *Frazier v. Jeakins*, 64 Kan. 615, 68 P. 24 (1902); *Burton v. Compton*, 50 Okla. 365, 150 P. 1080 (1915). The facts of the present case do not fall within this class of prohibited sales.

■ Additionally, sales of property involving a fraudulent "straw party," a purchaser in name only who conceals the identity of the "true" purchaser, clearly fall within the ambit of prohibited sales. In *Texier v. Texier*, 342 Mo. 1220, 119 S.W.2d 778 (1938), the Supreme Court invalidated a sale of real estate by guardian/stepfather as fraudulent. Stepfather sold the property to purchaser, who later deeded the property back to stepfather for $1. The court found that purchaser was a straw party and stepfather had indirectly purchased the property in violation of his guardian duties. In *Barnard v. Keathley*, 230 Mo. 209, 130 S.W. 306 (1910), a sale from executor/father to his son was set aside after son reconveyed the land back to his father. The fact that son bid $750 for the land but only paid $5 and in addition reconveyed the land to father for $50, combined with other facts, clearly established son as a fraudulent straw party and father as the actual purchaser.

■ In comparing the facts in the above cases to the case at issue, it cannot be said that Andrew Mings was serving as a straw party for Appellant when he purchased his grandfather's farm. The most important fact supporting this determination is that the property is still titled in the name of Andrew Mings alone. There has been no transfer of the property, and as Appellant testified, there is no agreement for Andrew to transfer the property to Appellant in the future. Additionally, Andrew Mings continues to live upon and carry his own insurance on the property.

■ The more difficult facts to rationalize are: (1) Appellant paid the 1996 and 1997 real estate taxes on the property and (2) Appellant gave Andrew Mings the $17,000 to purchase the property. However, these factors are not enough to turn Andrew Mings into a fraudulent straw party and dub Appellant the true purchaser of the real estate. The payment of taxes on a piece of property does not deem a person the true purchaser of that property, especially in light of the facts above enumerated. Andrew is still the record title owner of the property, he continues to live on the land, and there is no evidence of any collusion between the parties. As for Appellant's gift to Andrew of the purchase price, this, in light of the facts of this case, is also not enough to deem Appellant the true purchaser of the property. Appellant testified that he gave his son the $17,000 to buy the property because he had paid for his daughter's college education and wanted to give Andrew something as well. The money was not given as a loan, it was a gift. Appellant is allowed to give a monetary gift to his son without violating his duties as the conservator of his father's

estate.[1] The facts of this case simply do not support a finding of a straw party relationship between Andrew and Appellant. Again, Andrew continues to hold title to and live upon the land. There is no evidence of collusion between the two. Since it is not apparent from the facts of this case that Andrew Mings was acting as a straw party for Appellant, this case cannot fall into that prohibited class of sale.

After determining the sale of real estate at issue does not fall within a clearly prohibited category of sale, those cases, involving close personal relationships between buyer and seller, where a sale has been upheld, are now examined. In *Earney v. Clay*, 516 S.W.2d 59 (Mo.App.1974), a sale of real estate by an estate executor to his parents was declared valid. In upholding the sale, the court held:

> There is no claim or showing of a direct buy or that executor's parents in buying the three tracts were acting as agents or straws under a resorted-to pretense to place title to that property in the executor...A fortiori, if the executor's sale to his parents was not a feigned possibility that executor might sometime in the future inherit the property would not, in and of itself, bring the sale within the prohibitions of the law.

*Id.* at 65. (Citations omitted). The *Earney* court upheld the sale to executor's parents in the absence of any evidence of collusion between the parties. As above noted, there is no evidence of such in this case, and the reasoning of *Earney*, along with the other facts of this case, supports upholding the sale at issue.

*In re Branch's Estate*, 123 Mo.App. 573, 100 S.W. 516 (1907), a case even more factually similar to this one, involved a sale of property by an executrix to her son was sustained. The executrix sold the property without seeking out other purchasers and was even accused of discouraging interested parties from attempting to obtain the property. In confirming the sale, the court wrote:

> It is quite natural, and not at all censurable, that she should desire her son, who had been his father's mainstay during his last days, to have the home place, instead of a stranger...and, if she determined on letting her son have the farm at the highest price she had reason to think could be obtained for it, she should not be pronounced derelict for not seeking other buyers.

*Id.* at 518. Upholding this type of private sale, where a purchasing opportunity was not extended to any other party, certainly supports a finding in this case that Appellant did not directly or indirectly purchase the real estate and, therefore, did not violate his duties when the property at issue was sold to his son. In the instant case, the land in question was sold to Andrew Mings at a *public sale*, at which he was the highest bidder. No party is complaining that Andrew did not pay a fair price for the property. The decision in *Branch* supports a determination by this court that Appellant's actions did not violate § 475.235.

The trial court erred in setting aside the sale of real estate to Andrew Mings. The court's ruling was against the weight of the evidence. This was not a case in which Appellant "directly or indirectly" purchased the property due to the sale to his son. This was not a case of a sale between spouses nor was there any evidence that Andrew Mings was merely serving as a straw party for his father. The holdings of *Earney* and *Branch* support a finding

---

1. A troubling issue relates to the fact that Appellant filed an affidavit with the court stating that Andrew supplied the consideration for the sale. Appellant did not disclose the fact that he had given Andrew the money to purchase the property. To prevent any misrepresentation to the court, the better practice would have been to disclose to the probate court the whole truth regarding the origin of the purchase money. However, Appellant's failure to do so does not necessarily result in a violation of his conservator duties. This court is not condoning nor encouraging non-disclosure to the court in future guardianship cases.

that Appellant's actions were not a violation of law or duty. Consistent with decisions of the courts of this state, Appellant can not be said to have directly or indirectly purchased the property at issue.

### B. Lack of Notice Regarding Disallowance of the Sale

Appellant's second claim is the trial court erred in disallowing the sale of real estate because proper notice was not afforded to interested parties. As detailed in the statement of facts, Andrew Mings was the title holder of record for the property in issue. Prior to the hearing on the final settlement of the estate, Andrew Mings was afforded notice only on the issue of conservator compensation. No notice was given to Andrew on the final settlement hearing, nor was he given notice that a disallowance of the land sale was a possibility. It was at the hearing on the final settlement that the sale was disallowed, apparently on the court's own motion since no motion to set aside was ever filed with the court. Although this point is mooted by the decision on the first point, and a question exists whether this appellant can raise this issue, the court will nevertheless examine the point.

Appellant cites to caselaw holding that on a motion to set aside a sale, notice must be given to all interested parties and to those who stand to be prejudiced by a set aside. *See State ex rel. Banner Loan Co. v. Landwehr,* 324 Mo. 1142, 27 S.W.2d 25, 27 (1930), *State ex rel. Weber v. McLaughlin,* 157 S.W.2d 800, 802–3 (Mo.App.1942). It goes without saying that the purchaser/title holder of the property is an interested party in a proceeding to set aside the sale of that property. Andrew Mings stood to incur substantial prejudice by a set aside, as such an action would result in stripping his title to the land. Respondent, conservator ad litem, counters that the above cited caselaw is inapplicable to the case at bar since there was never a motion to set aside the sale. Respondent contends that since the hearing was only

on the final settlement of the estate, and was not on a motion to set aside the sale of real estate, no notice needed to be given to Andrew Mings.

■ The problem in this case is that, though there was not made a motion to set aside the sale of real estate, the probate court proceeded as if such a motion had been made or was unnecessary, and ordered the sale disapproved. The result of the trial court's actions is unclear. While the sale has been disapproved, Andrew Mings still holds title to the real estate. Presumably, without an actual grant of a motion to set aside the sale, title to the property will continue to remain in the hands of Andrew Mings. The bottom line, however, is that the trial court's actions in disallowing a previously approved sale of real estate at a hearing for final settlement, without notice to interested parties, namely the purchaser and title holder of the property, was in error. There was an approved sale for a price that was not insufficient. The order approving the sale was final long before any attempt to set it aside at the hearing on the final settlement. Courts have gone to great lengths to uphold judicial sales of real estate, and title derived from those sales should not normally be attacked in a collateral proceeding. *Strouse v. Drennan,* 41 Mo. 289, 296–7 (1867); *McVey, Curator, v. McVey,* 51 Mo. 406, 424–5 (1873). Whatever the result of the court's actions, notice should have been given to Andrew Mings that a disallowance of the sale of property he purchased was being considered by the court. As noted under the first point above, the court's decision setting aside the sale of real estate is reversed.

### C. Conservator Fees

Appellant's third point is that the trial court erred in denying him conservator compensation and in requiring him to pay the conservator ad litem's fees. The record is void of any explanation for the probate court's denial of Appellant's request for compensation. Presumably, fees were

denied in accordance with § 475.265 which reads:

> A guardian or conservator shall be allowed such compensation for his services as guardian or conservator, as the court shall deem just and reasonable...*If the court finds that the guardian or conservator has failed to discharge his duties as such in any respect, it may deny him any compensation...*

(Emphasis added). This court assumes Appellant's request for fees was denied after the probate court determined he violated § 475.235, and "failed to discharge his duties" in the sale of property to his son. However, this court finds Appellant did not violate § 475.235 in carrying out his conservator duties. Therefore, in the absence of any other explanation for the denial of fees, the trial court's denial was against the weight of the evidence presented. The issue of conservator fees should be re-examined by the probate court on remand in accordance with this court's holding that Appellant did not violate any law by selling a piece of his father's property to his son.

The cause is reversed and remanded. The probate court is instructed to approve the final settlement, if in order, re-examine Appellant's request for fees and the allocation of the conservator ad litem's fees, and close the estate and discharge the conservator. It is so ordered.

All Concur.